## BUTLER, assignee &c., *vs.* TRUSLOW.

A judgment entered upon the report of a referee will be reversed when it is entirely and clearly against the evidence.

Prior to May 9, 1859, L., who was engaged in the business of manufacturing sewing machines, had been in the habit of purchasing of the plaintiff materials for such business. On that day the defendant was employed by L. to act as his agent in said business. But he was never a partner of L., and never held himself out, to the plaintiff as such partner; and although the plaintiff was informed by a third person that the defendant had become a partner "in the concern," yet he continued to deal with L. precisely as before, charging the goods to him in his books, making out the bills to him, and receipting them to him; and there was no pretense of charging anything to the defendant, or of claiming anything from him, until the solvency of L. became doubtful, when an alteration was made in the plaintiff's books, amounting to a moral forgery; *Held* that the defendant could not be made liable for the goods so furnished to L., it being clear, as a question upon the statute of frauds, that the entire credit was not given to the defendant.

Proof that a witness had previously told to others the same story he testifies to, is inadmissible for the purpose of corroborating his testimony. Hence the testimony of the plaintiff, showing that facts sworn to by a witness were previously communicated to him by the latter, can scarcely be regarded as any legal evidence to confirm the witness.

Where a referee stated, in his report, that there were many circumstances tending to weaken and disparage the testimony of a witness, yet that in view of all the circumstances he felt impelled to believe him *in a specified particular; Held* that this was a proper case for the application of the maxim, *Falsus in uno, falsus in omnibus.*

Where the testimony of a witness was improbable, and inconsistent with the surrounding facts; was contradicted by the defendant, and by the circumstances; the witness contradicted and impeached himself, by his writings and

acts; all the defendant's witnesses contradicted him; the conduct of the plaintiff contradicted him; and he was sustained by no witness and by no circumstance; *Held* that it would be a mockery of justice to sustain a judgment founded upon his testimony.

THIS was an action for goods sold and delivered to the defendant by the plaintiff's assignor. Denial by the defendant's answer. The cause was referred to a referee, who reported in favor of the plaintiff. From the judgment thereon, the defendant appealed to this court.

*J. H. H. Pinckney*, for the plaintiff.

*L. R. Marsh*, for the defendant.

*By the Court*, PECKHAM, J. After a careful and repeated reading and consideration of the testimony in this case, I can come to but one conclusion, and that is that the report is entirely erroneous, and that the judgment should be reversed as clearly and entirely against the evidence.

It appears by the testimony that prior to May 9, 1859, one Lester had been engaged in business in New York, in the manufacture of sewing machines. He had dealt considerably with the plaintiff in purchasing materials therefor. On that date the defendant entered into a contract with Lester, to act as his agent in said business, and to go into his employment. So the referee properly finds. He also properly finds that the defendant was never a partner of Lester, and never held himself out as such partner, to the plaintiff. But he finds, as appears by his opinion, that the goods were purchased under a contract made with the defendant's authorized agent, *or* upon his sole credit; that "the goods were sold on a contract made with William Wetmore as agent for the defendant, and on the sole credit of Truslow, pledged by his said agent, the plaintiff having theretofore refused to sell Lester on credit."

The whole of this finding rests upon the testimony of

this William Wetmore; neither the plaintiff nor any one in his employ ever having seen the defendant, or had anything to do with him personally, as to this business.

I may remark that upon the evidence of the plaintiff and of William Wetmore, if believed, it appears that the plaintiff was informed by Wetmore that the defendant had become a partner "in the concern;" that "a man of means had come into the concern." Yet he never was, and never pretended to be, a partner. And from that time (June, 1859) forward, the plaintiff dealt with Lester precisely as before—charged the goods in day-book and ledger as before—made out the bills to Lester and receipted them to him.

As to trusting Lester, the practice was the same as before. The plaintiff says he never trusted him. The witness Wetmore says he never asked any one to trust him. There is substantially no trust here. The pay was every two weeks. There was no pretense of charging anything to the defendant, or of claiming anything from him, until the necessity of doing so appeared, by the bad prospect of getting the demand from Lester, the real party purchasing. Then an alteration was made in the plaintiff's books amounting to a moral forgery, this action was brought, and Wetmore is the chief, the necessary witness to sustain it. It is entirely clear, as a question upon the statute of frauds, that the entire credit was not given to the defendant. The bills were made out to Lester, and the amount first sought to be obtained from him, for purchases all through the year 1859; and it is not pretended that any new or different arrangement was made as to the year 1860. And the referee finds, as the fact is, that the defendant was not a principal, and did not buy of the plaintiff as principal. If anything, according to the referee, he was simply a guarantor; and the case shows that the whole credit was not given to him. That is an answer to this action.

But it is not at all necessary to put this decision upon that ground.  It is impossible to read over the evidence of this witness Wetmore, in connection with the other indisputable facts of the case, without feeling indignant at its utter lack of truthfulness.  If we look at the oral testimony of this witness alone, he proves that this defendant was not only a principal in that sewing machine manufacture, but the only principal; that he knew no other; that the defendant was the sole man in the business.  Yet he is not only overwhelmingly contradicted by the witnesses and papers in the case, upon every material point, but his own letters, drafts and papers contradict him.  They show that he well knew that the defendant was the agent, and that Lester was the principal; that he so treated them.  A more absolute impeachment of a witness by himself—a more entire destruction of his credibility—I think I have never seen.  The whole substance of his evidence is shown to be untrue, by the writings and acts of the witness himself.

It is said that the testimony of the plaintiff sustains Wetmore.  The plaintiff never saw or spoke to the defendant as to the alleged directions he gave to Wetmore.  He only testifies to what Wetmore told him, viz., that "a man of means had come into the concern," and that he would pay every other Tuesday.  This statement of the plaintiff as to what Wetmore told him can scarcely be regarded as any legal evidence to confirm Wetmore.  It is admitted solely to show that the plaintiff gave the credit or sold to the defendant.  Proof that Wetmore had told the same story to any other person would have been inadmissible.  Yet it would have been just as strong to confirm Wetmore.  But the conduct of the plaintiff is at war with this statement as to the defendant; for he continues the charges the same as before, and makes out the bills given, including many items of the bill in suit, against Lester alone, and demands their payment of him, on the

Butler *v.* Truslow.

bills; thus in the strongest way sustaining the defendant. But in the spring of 1860 Lester closes up the business, dismisses the defendant as agent, and Lester being not responsible, and the defendant regarded as good, he is sought to be converted from agent to principal, and required to pay for his principal's goods; and he is sued, not as guarantor, but as the vendee of the goods. After saying that Truslow denies the statement of Wetmore, as he unqualifiedly does, (and there is no circumstance in the case to weaken his evidence,) the referee adds that "there are many circumstances tending to weaken and disparage the testimony of Wetmore, yet in view of all the circumstances I feel impelled to believe him *in this particular.*"

I have been unable to find the circumstance that aids or sustains Wetmore. The referee seems to concede that he does not credit Wetmore in anything else. *Falsus in uno, falsus in omnibus,* is a sound rule, and this is a proper case for its application.

This testimony of Wetmore as to the alleged authority of the defendant to him to buy, and he, the defendant, would pay every second Tuesday, is improbable, and inconsistent with the surrounding facts. It is contradicted by the defendant, and by the circumstances; the witness contradicts and impeaches himself, by his writings and acts; all the defendant's witnesses contradict him; the conduct of the plaintiff contradicts him. He is sustained by no witness, and by no circumstance. What a mockery of justice to found a judgment upon his evidence!

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

CLERKE, P. J. I concur, on the ground that the finding of the referee is palpably against the weight of evidence.

New trial granted.

[NEW YORK GENERAL TERM, November 1, 1869. *Clerke, Ingraham* and *Peckham,* Justices.]