Sylvester Deering, Appellant, *v.* William Metcalf, Respondent.

The fact that the testimony of a witness is shown to be untrue in some particular does not, as matter of law, where it is not made plain that the testimony was corruptly given, require his testimony, as to other matters in which it is not contradicted, to be disregarded.

A court of review, therefore, cannot, as matter of law, hold that a finding based solely upon such uncontradicted testimony is without evidence to sustain it.

As to whether the rule would be different where it conclusively appeared that the witness was corruptly false in his testimony which was contradicted, *quære*.

In an agreement between partners it was agreed that for the purpose of disposing of the joint stock of the firm "as detailed in" a prior inventory thereof, all the property of the firm excepting certain specified items, and excepting "the book accounts and receivables" should be put up and bid upon by the partners; this was done and plaintiff became the purchaser. In an action for an accounting it appeared that after the inventory and prior to the bidding, certain chattels of the firm had been sold. *Held*, that the sale did not include said chattels or the money or debts obtained therefor; that the statement as to the inventory was simply by way of reference and in the nature of a recital or matter of inducement.

(Argued September 25, 1878 ; decided October 4, 1878.)

APPEAL from a judgment of the General Term of the Supreme Court, affirming a judgment in favor of defendant, entered upon the report of a referee.

This was an action for the settlement of partnership accounts.

Prior to May 27, 1871, the parties had been co-partners in the lumber business, and in operating a planing-mill. On that day they entered into an agreement, the material portion of which is as follows :

" For the purpose of disposing of the joint stock of the firm of Metcalf & Dering, as detailed in the inventory thereof completed on the 22d or 23d of the present month, we hereby agree to bid upon all the machinery, leases, lumber, both manufactured and unmanufactured, hardware, office furniture and stationery, horses and carts, sleighs, tools and machinery, and every other kind of property jointly owned by the parties hereto, excepting only the real estate on Elizabeth street, the contracts for building the Female Seminary, the Methodist church, and the Mechanics' Hall, and the book accounts and receivables of the firm, which are to be collected as rapidly as practicable, and the proceeds thereof applied to the payment of the debts owed by the firm ; and if any balance is realized over and above the amount required to pay the outstanding indebtedness of the firm, such balance is to be divided equally between the parties to this agreement."

Plaintiff became the purchaser, and on June 3, 1871, defendant executed to him an agreement, following the words of said agreement as to the property conveyed. After the making of the inventory referred to and prior to the bidding some portion of the land had been sold.

The further material facts appear in the opinion.

*A. M. Beardsley*, for appellant. Metcalf having been shown unworthy of belief, it was error of law to give any effect to his testimony. (*Butler* v. *Meslow*, 55 Barb., 293; *Sanders* v. *Leigh*, 2 H. & McH., 380; 1 C. & H., notes

[ed., 1839], part 1, pp. 396, 397, 690; *Dunlap* v. *Patterson*, 5 Cow., 243; *State* v. *Jim*, 1 Dev., 508; *Newell* v. *Wright*, 8 Conn., 319, 323; Schooner Boston and Cargo, 1 Sumn., 356; The Sartissima Trinidad, 7 Wheat., 283, 339; *People* v. *Evans*, 40 N. Y., 1, 5, 6; Best on Presumptions, 47 Law Lib., 206.)

*William Kernan*, for respondent. The agreement could not be qualified or limited by the memorandum of May twenty-seventh, or varied by parol. (*Tibbits* v. *Percy*, 24 Barb., 39; *Thomson* v. *Ketcham*, 8 J. R., 190; *Van Allen* v. *Allen*, 1 Hilt., 524; *Lewis* v. *Jones*, 7 Bosw., 366; *Thomas* v. *Truscott*, 53 Barb., 200; *Barry* v. *Ransom*, 2 Kern., 462; *Platt* v. *Scott*, 17 N. Y., 478; *Turner* v. *Jaycott*, 40 Barb., 164.)

FOLGER, J. This is an action for the settlement of partnership accounts. There is no contest in this court over any item thereof but two. The first of those was allowed by the referee, upon the testimony of the defendant, and upon that alone.

The exceptions taken by the plaintiff are all to the conclusions of law of the referee ; and the point made here, upon the item last above spoken of, is that there is no testimony to sustain it. As we have said, there was testimony, but from the defendant alone. But it appears from the record that the defendant was contradicted in what he testified to on other items, more than once, by other witnesses, to whom the referee gave credence therein rather than to the defendant. Thus, says the learned counsel for the appellant, the defendant was shown to have testified falsely and corruptly ; and the claim is made, that a witness who stands thus before a court is not, as matter of law, entitled to belief upon any issue to which he speaks upon the trial; and the maxim, *falsus in uno, falsus in omnibus*, is invoked. And then, the argument runs, the law holding him entirely unworthy of belief, his testimony is as no testimony, and there is no

evidence upon which to base the conclusion of law excepted
to. If it be conceded that the case does clearly show that
the defendant was corrupt in giving his testimony, that is,
that he testified falsely, with the consciousness and knowl-
edge that what he said was not true, and with the intent to
testify to it and to have it believed, the learned counsel has
show of authority for his position. Thus in *Dunlop* v. *Pat-
terson* (5 Cow., 243), the Supreme Court held that the jury
should have been instructed to disregard the testimony of
such a witness, that it was error not to have so instructed
them, and that the judgment should, for that error, be
reversed. There, however, the witness admitted that he
had, on a former examination as a witness to the same mat-
ter, sworn falsely, and knew at the time of so swearing, that
his testimony was false. His conduct fell within the defini-
tion of perjury; and there was no escape from the conclu-
sion that he had been, or then was, a perjured witnesss. And
the judgment of the court is there put upon the ground, sub-
stantially, that out of his own mouth was he convicted; that
he was a witness " who swore at one time in direct contradic-
tion to the testimony given by him at another, in relation to
the same transaction." This case has been commented on in
*Dunn* v. *The People* (29 N. Y., 523), and limited. We are
obliged to confess that we see little difference, in the effect
of the facts, in the two cases. In the last, the witness
admitted, on cross-examination, that she had, on a prior
judicial hearing, testified as a witness to several statements
which she now admitted were not true ; and it would seem
that she must at the first, as well as at the last, have known
that they were untrue. But this court held, that it was not
a conclusion of law that a witness so impeached, *ipso facto*,
could not be credited, and that if the self-contradiction was
explained in some reconcilable way, his testimony might be
taken into consideration and estimated by a jury for what it
should by them be considered worth ; and that the testimony
remained in the case to be considered by the jury, under
such prudential instructions as might be given by the court,

and subject to the determination of the court having juris-
diction to grant new trials in cases of verdicts against evi-
dence. *Lee* v. *Chadsey* (3 Keyes, 225), is nearer in its facts
to the case before us. There the character of a witness had
been impeached by witnesses who testified that they would
not believe him under oath. It does not appear that his
character was sustained on that issue by other witnesses. It
was held, that a witness thus impeached might yet tell the
truth ; and if from his manner and the circumstances of the
case the jury believed him, he was a competent witness, and
the jury might act upon his testimony. (See S. C., 2 Keyes,
543.) The question arose again in *The People* v. *Evans* (40
N. Y., 1). There the indictment was for subornation of
perjury. The witness was the person alleged to have been
suborned, and he testified that he had sworn willfully false,
induced by the promise of twenty-five dollars therefor. It
was conceded by this court that the general rule is, that the
question of the credibility of a witness belongs to the jury ;
(see *Conrad* v. *Williams*, 6 Hill, 444); but that that rule is
limited by another, that if the jury find that the witness has
sworn corruptly false in one material thing, they shall pro-
nounce him false in his whole testimony, and utterly disregard
it ; and the maxim above quoted was relied upon. And the
court held, that it was error for the trial-court to charge that
it was competent to convict on the uncorroborated and unsup-
ported testimony of the witness ; and error also, for it to refuse
to charge that the jury ought not to convict upon his unsup-
ported evidence. The question arose again in *Pease* v. *Smith*
(61 N. Y., 477), and a distinction is there taken which seems to
us to be sound, and which can be properly applied to the
case before us. It was there held by the learned Commission
of Appeals, that it was not error to refuse to charge that
where a witness is false as to one statement the jury ought
not to place implicit reliance upon his other statements ; and
that the court, in such cases, can only caution the jury to
weigh the testimony with care and close scrutiny. It was
also said, that the maxim above quoted applies only where

truth has been intentionally disregarded.   It is partially conceded that there would be an exception to the rule first stated, if the witness is shown to be guilty of perjury, though not convicted.   The same learned court, in *Place* v. *Minster* (65 N. Y., 89), say, that the cases which hold that the testimony of a witness who contradicts himself, or who is impeached by the testimony of others, must be rejected by the court, cannot be regarded as law in this State ; (and see *White* v. *McLean*, 57 N. Y., 670).   And in *Wilkins* v. *Earle* (44 id., 172), it is said, that in a case of contradictory statements, the jury must believe that the evidence is wilfully false in some particulars, before they are authorized to discredit the whole testimony of a witness.   And the rule is stated in Starkie on Evidence (see p. *873), in general terms, not discordant with these decisions of the Commission of Appeals, in this wise : " It follows that a witness who gives *false* testimony, as to one particular, cannot be credited as to any ;   *   *   *   this principle does not extend to the total rejection of a witness whose *misrepresentation* has resulted from mistake or infirmity and *not from design*   *   *   *."   Here is the distinction between a corrupt falsehood and an undesigned mis-statement.   And the purport of the remark of STORY, J., speaking of the maxim above quoted, in *The Santissima Trinidad* (7 Wheat., 328, 339), is, that it may be properly applied in those cases only, where a witness speaks to a fact, with reference to which he cannot be presumed liable to mistake.   (And see *Sanders* v. *Leigh*, 2 Har. & McH., 380.)   The cases in the present Supreme Court we are unable to reconcile ; they are not in accord ; as examples of them see *Butler* v. *Truslow* (55 Barb., 293); *Warren* v. *Haight* (62 id., 490).   Now we are not called upon in the case in hand to say what is, or should be the rule in the case of a witness, of whom it is apparent that he has sworn corruptly false.   Here, the most that can be claimed is, that some testimony of the defendant was shown to be untrue ; it was not made plain that the defendant must have corruptly given it.   Unless the referee thought that the

defendant had corruptly sworn false in some particular, we cannot say that, as matter of law, he was bound to disregard his testimony *in toto*. The reason of the maxim invoked by the appellant appears in the words of Badger, speaking as *amicus curiæ*, in *State* v. *Jim, a negro* (1 Dev. Law R., 508); " that the jury had, as to the particular case, judicially ascertained the corruption of the witness, and therefore, as to that case, the result was the same as in all cases where the corruption was judicially ascertained by a conviction for perjury." If a witness has been theretofore convicted of perjury, he is not competent as a witness ; the jury ought to be, and cannot but be satisfied thereby of his unworthiness to testify ; and if a jury clearly see that a witness, in a case on trial before them, has, in that case or in a prior one, sworn corruptly false, they can but be satisfied of his utter unreliability, and they ought to disregard all the testimony given by him to them. And with instruction to that purport, a jury cannot well go astray. Thus we see that the question of guilt or innocence of corruptly false utterance, is primarily for the tribunal before which the witness appears and to which his testimony is addressed. If there is room for doubt as to that guilt, the tribunal may consider the testimony of the witness which is not overborne by contradiction or otherwise ; and a court of review cannot say, as matter of law, that if a verdict or other conclusion is founded upon that testimony, that there was no evidence to sustain it. In the case before us, the referee was that tribunal. It is apparent that he did not deem the defendant a corrupt falsifier. That decision, under the facts as they appear in this case, was for him and not for us. The proof of willful and corrupt testimony from the defendant was not so palpable as that we can say that the referee ought to have held him unworthy of belief at all. Therefore we cannot say that there was no evidence on which the referee could base a finding of the item complained of. How it would be in a case where it was, to our judgment, conclusively shown that the witness was corruptly false, we are not now called upon to say.

The second point made by the appellant is not tenable. The sale to the plaintiff, upon the bidding agreed upon between them, did not include chattels which they once owned, but had sold before the bidding ; nor did it include the money or debits obtained therefor. It is true that that agreement speaks of the property as detailed in the inventory, but it is by way of reference and description only. It is in the nature of a recital or matter of inducement. It is not that which is agreed to be done. " For the purpose of disposing of the joint-stock of the firm of Metcalf & Dering, as detailed in the inventory thereof, completed on the twenty-second or twenty-third of the present month, we hereby agree to bid upon all the machinery, etc., *jointly owned* by the parties hereto, excepting   \*   \*   \*   the book accounts and receivables of the firm." This, the first part of the writing, is a statement of the object of the agreement ; then comes what is agreed to be done, viz. : to bid upon the property jointly owned by them, with the exception above stated. And it is stated that " the joint-stock and property, thus offered, is to be bid upon." It is plain that the lumber sold in the meantime was not property still owned by them. It had been changed into accounts or receivables. As such, it was expressly excepted from the bid and sale. It appears that the inventory referred to was not finished and did not include all that it was intended should appear in it. Yet it will not be claimed that the reference to it shut out from the bid and sale chattels of the firm not enumerated in it, or which might have been bought after the inventory was made. The agreement of conveyance of the third of June is in the nature of a contemporaneous construction by the parties of that of May. That again excepts all book accounts, receivables and debts. (See *Platt* v. *Lott*, 17 N. Y., 478.)

The judgment should be affirmed.

All concur, except MILLER and EARL, JJ., absent.

Judgment affirmed.