Daniels, J.
The indictment charged the defendant with an offense under section 294 of the Penal Code, and evi *218 deuce was given tending to prove the truth of this charge. That of the complaining witness was direct and positive, and that the offense was committed at his instance. He denied the charge and his evidence as a witness upon the trial directly supported this denial. The evidence of the complaining witness was contradicted in material respects by a statement made by her before the coroner at a period in her illness when it was supposed it would prove fatal. But the testimony she gave upon the trial was supported by that which was obtained from Dr. Gray, who was procured by the defendant to attend to the case, after he had himself become alarmed by its symptoms. A conversation is stated to have taken place between the defendant and this witness, in which the latter informed him of the dangerous condition of the complaining witness, to which the defendant replied, that if the case got out it would cause a great deal of scandal; that-he himself had done nothing wrong, and if the physician conversing with him would keep it quiet he would make it all right with him, and said something about taking to flight, but which he was not at liberty to do on account of some business connected with the buying or selling of a house. It appeared further, that after the defendant was arrested he was taken into the presence of the complaining witness, and that she then said: “This is the man who performed the operation on me which caused the abortion.”, I think she said “miscarriage.” He said: “I have been a friend of yours.” She said: “Don’t come near me; put this man out; I don’t want to see him.” I had him removed from the room in consequence; that is all that took place. Upon the cross-examination of the coroner, he added that after the defendant remarked, “I have been a friend of yours,” she would not allow him to speak or say anything, and insisted upon his being taken away. This evidence was received against the defendant for the reason that he made no denial of the charge brought against him by the woman, and although she objected to his speaking, he could as well have denied it, if he had been disposed to do so, as to have made the remark which he did. The opportunity to deny was afforded him, notwithstanding the summary manner in which the conversation was brought to a close; and that such evidence maybe received upon the trial, of an indictment, although the defendant at the time of the conversation may be under arrest, has been held in Com. v. Brown (121 Mass., 69), and in People v. Kelley (55 N. Y., 565); and the cases of Com v. Cuffee (108 Mass., 285), and Com v. Crocker (id., 464), proceeded upon the same principle. And it is not affected by anything said in People v. Willett (92 N. Y., 29). For the charge there made was in the course of a judicial proceeding, which the defendant was not *219 at liberty to interpose and correct, while here he was subjected to no restraint whatever preventing him from denying the truth of the statement made by the woman, if he had been disposed so to do. The evidence, it is true, was not of a forcible character, but it was such as the jury were at liberty to consider. It further appeared, after the complaining witness had obtained rooms where she could remain during the prospective period of her disability, succeeding the performance of the operation, that the defendant on the same evening called to see her and attend her as her physician. These were facts tending to corroborate the testimony of the woman herself, and to connect the defendant with the commission of the offense, as well as to prove that it had in fact been committed. As to this latter portion of the case, however, the testimony of Dr. Gray in his description of the condition of the woman also had a direct tendency to show that she had been operated upon as stated by her. The case being presented for the people in this way entitled the jury to consider it, although the statements of the complaining witness were contradicted by the witness, Anna Adams, the defendant himself, and the witness O’Malley. Other testimony was also given on behalf of the defendant, tending to develop the probability at least, in favor of the truth of his denial of the accusation. But with all this evidence, including the inconsistencies of the statements of the complaining witness, the case was still one proper to be submitted to the jury, and it was for them to determine its weight and effect, having the witness, before them from whom the evidence was obtained; and their determination must now be regarded as final, even though from the case as it appears they might have found in favor of the defendant. There was not such an absence of testimony as would warrant the court in holding that the verdict was against the weight of evidence.
During the trial the complaining witness was allowed to repeat what Annie Soper said to her when she was in search of the rooms to which she stated the defendant had directed her. The evidence was received under the objection of the defendant, that it was immaterial, irrelevant and incompetent, and an exception was taken to the ruling of the court allowing the statement to be given. The evidence was received for the reason that the'complaining witness testified that the defendant directed her to go to the building occupied by Annie Soper to obtain rooms, but this direction did not necessarily subject him to any responsibility for what Anna Soper said when she was found by the complaining witness. But the exception which was taken in the case will still be of no service to the defendant, for the same evidence has previously been *220 substantially received during the trial without any objection whatever on the part of the defendant. The complaining witness there stated that the defendant had given her a card to ask for Miss Soper, and that she was shown to her room. She then stated, ‘ ‘ I said Dr. Meyers sent me here,” and she said “ Yes, I expected you, and he said I should have a room for you.” After that the doctor came about nine o’clock that night.
The complaining witness further stated that the defendant said to her, “ask for Miss Soper, she has been through the second operation, and she will help you all through, she knows all about it.” The evidence admitted under the objection and constituting a repetition of this statement was this, “I went up-stairs and she cometo the door and I said you don’t know me, but I am Mrs. Martin, Dr. Myers has spoken of you,” and she said, “Dr. Myers has told me that he has a very nice room for you here, and has told you everything,” and I said, yes. “Have you had an examination?” and I said, “yes, but I feel very badly and cannot get back to-night,” and she said, “I will show you the room.” While the last statement was more elaborated than the first, it was still substantially contained in the evidence given by the witness upon the same subject without objection. But under section 527 of the Code of CrimPro. an exception was not indispensably necessary, if the evidence can be seen to be of any material detriment to the defendant. But it cannot be, for it added nothing whatever to the weight of the evidence of the complaining witness. She had before stated that the operation had been performed upon her by the defendant, and her testimony stating that she was directed by him where she could find Miss Soper, and the relation of the conversation which took place between them, added nothing whatever, as it was wholly dependent upon the testimony of the complaining witness, and her evidence concerning what transpired between herself and defendant. In fact, her testimony was weakened rather than strengthened by this evidence, for the interview was directly and positively denied by the witness, Anna Soper, in her examination upon the trial. There is no reason accordingly from which it can be supposed that the defendant was injured in the least by this testimony, even if it should not have been received by the court, and mere technical errors not affecting the substantial rights of the defendant are required to be disregarded by section 542 of the Code of Grim. Pro.
It was also urged on the trial that there was no evidence that the abortion was not necessary to preserve the life of the woman, but while there was no positive statement that this was not the fact, the import and tendency of her evi *221 dence was that she was in no danger, and that the instrument was not introduced either for the preservation of her life or that of the child.
As the evidence was given, it was for the jury to say whether this might or might not have been the fact. The defendant himself testified that the child of which the woman was pregnant was previously in a deceased condition.
This point was submitted to the jury under the charge of the court, as it was alleged in the indictment, and they were informed that it was incumbent upon the prosecution to prove that the abortion was not procured to save the life of the woman or of the child. The court also held that the defendant could not be convicted without corroborative evidence beyond that of the complaining witness, to connect him with the connection of the crime according to the requirement of section 399 of the Code of Criminal Procedure. And that there was corroborative evidence in the case of this discription has already been stated. But in this class of cases, inasmuch as it has been made one offense to use any instrument, or other means to procure an abortion, and another offense on the part of the pregnant woman to submit to such use, this corroborative evidence does not appear to have been required, for she was not an accomplice in the commission of the offense charged against the defendant, as that offense has been decided in section 294 of the Penal Code, but was herself guilty of another crime described in section 295 of that Code. And for that reason it was considered in People v. Vedder (98 N. Y., 630), that no corroboration of the complaining witness was required by this section of the Code of Criminal Procedure. The authorities were there considered bearing upon the point, and it is now unnecessary to attempt any elaboration of their consideration.
The court was also requested to charge the jury that if they believe Mrs. Martin wilfully swore falsely, either in her statement before the coroner, or at this trial, the jury have the right to disregard her testimony, and should do so unless she is corroborated in her testimony as to the commission of the offense, and the judge presiding at the trial, responded: “I think that request is substantially correct, except that it is assumed that there was an oath before the coroner, when such is not the case. And the fact was that the statement taken down by the coroner was not made under oath. So far as it disagreed with her evidence upon the trial, she explained that her condition at the time when the statement was made, was such that she was not able clearly to understand, or remember, what had then transpired. And this may very well have been the truth *222 inasmuch as the attendant physician considered her then to be in such a dangerous condition as would probably soon terminate in her own decease. There was no concession on the part of the prosecuting witness, that she had wilfully sworn falsely on the trial, but she endeavored to reconcile the evidence given by her on the trial, and explain the discrepancies between it and the statements made to the coroner, by' a reference to her condition and feelings at the time when the latter were obtained. It is true that she was contradicted in her evidence by the defendant himself as well- as the witness Soper and O’Malloy, and, if they were correct in what they stated the defendant was entitle*:! to and certainly would have obtained an acquittal. He could be convicted only by the jury discrediting his own testimony, and as his conviction did take place, that must be considered to have been unreliable by the jury. But without reference to the condition of the testimony, the charge was as favorable to the defendant in answer to this request, as he had the right to expect it to be under the law. The response of the court was that the request was substantially correct, and that was as far under any of the authorities as the judge was justified in declaring this rule of evidence. People v. Evans, 40 N. Y., 2; People v. Petmecky, 2 N. Y. Crim. Rep, 450; Deering v. Metcalf, 74 N. Y., 501.
In this last case, the authorities were all examined and considered by the court, and the rule was not carried further than it was given to the jury in the charge which was made.
The case upon the evidence was one for the jury. ' It is quite probable notwithstanding the positive denials by the defendant, that he did make use of the instrument, and in that manner bring about this premature birth. This probability was decidedly maintained by the testimony given by Dr. Gray, and so it was in a slighter degree by that obtained from the coroner. And while the jury might have relieved the defendant from the charge upon his own testimony and the evidence of the witnesses sworn in his behalf, they were still at liberty to reject his statement, and correct him as they did upon the testimony in the case. There is no legal ground on which the court can interfere and reverse this conviction.
Both the judgment and the order denying the new trial should be affirmed.
Van Brunt, P. J., concurs.
I concur in this but reluctantly inasmuch as the complainant witness was not only seriously contradicted, but inconsistent and contradicted herself on important subjects.
Brady, J.