only for so much of the note as represented the premium on the policy to the time when it lapsed. In other words, there was due the defendant May 19, 1903, on said note $6.27 for premium on the policy, including interest for the three months from February 19, 1903, to May 19, 1903, when the note matured and the policy lapsed.

The submission contains the following statement of facts:

"The entire reserve on said policy at the end of the third policy year, February 19, 1903, including all dividend additions, was fifteen dollars sixty-six cents ($15.66), of which amount (provided no deduction be made for the annual premium due on that date) the sum of ten dollars forty-four cents ($10.44) was available to continue said policy in force at its full amount at the age of the insured at that time, for a period of one year one hundred one days, * * * all according to the provisions of section 88 of the Insurance Law then in force."

If on February 19, 1903, "the sum of ten dollars forty-four cents ($10.44) was available to continue said policy in force at its full amount at the age of the insured at that time, for a period of one year one hundred one days," it would seem to be logical that the same amount of reserve must have been available three months later, when the policy lapsed, to accomplish the same result; it appearing that the age of the insured at his nearest birthday remained the same, subject, however, to whatever indebtedness of the insured for premium existed at the expiration of said three months. As stated, there was then due on the premium note $6.27, which under the statute must be deducted from the reserve amount of $10.44 to form the basis for extended insurance (Taylor v. New York Life Insurance Company, 197 N. Y. 324, 90 N. E. 964), leaving a balance of $4.17. If $10.44 would extend the insurance "one year one hundred one days," it would seem that $4.17 would extend it for a proportionate time, and, if that be correct, a simple mathematical computation demonstrates that the reserve after deducting the premium due was sufficient to extend the policy until after the death of the insured. If these conclusions of fact are not correct, the statement of facts submitted should have so informed us. If our conclusions are correct, this policy was in force for the full amount when the insured died.

The parties have stipulated that, if the policy was in force at the time of the death of the insured, plaintiff is entitled to recover $999.-93 with interest from November 18, 1903, for which amount judgment is ordered in favor of plaintiff, without costs. All concur, except SMITH, P. J., and HOUGHTON, J., dissenting.

---

(68 Misc. Rep. 643.)

### IVES v. SOUTH BUFFALO RY. CO.

(Supreme Court, Special Term, Erie County. September, 1910.)

1. MASTER AND SERVANT (§ 87*)—INJURIES TO SERVANT—MASTER'S LIABILITY INDEPENDENT OF NEGLIGENCE—STATUTES—APPLICATION.

Laws 1910, c. 674, imposing a liability for injuries to servants independent of the master's negligence, applies only to workmen engaged in manual or mechanical labor in certain employments declared by the act to be dangerous by reason of inherent, necessary, or substantially un-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

avoidable risks, in which it is deemed necessary to establish a new system of compensation for accidents to workmen.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 138; Dec. Dig. § 87.*]

2. MASTER AND SERVANT (§ 87*)—INJURY TO SERVANT—EMPLOYER'S LIABILITY —STATUTES—SWITCHMEN.

A switchman employed by a railroad company was an employé entitled to recover independent of negligence, under Laws 1910, c. 674, making masters operating steam railroads, locomotives, engines, trains, motors, or cars propelled by gravity or steam or other mechanical power liable for injuries independent of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 138; Dec. Dig. § 87.*]

3. CONSTITUTIONAL LAW (§ 245*)—EQUAL PROTECTION OF LAWS—CLASSIFICATION.

Laws 1910, c. 674, imposing a liability on employers for injuries to servants independent of negligence, where the employment is inherently dangerous and including railroads within such classification, was not unconstitutional as depriving railroad companies of the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 245.*]

4. CONSTITUTIONAL LAW (§ 301*)—DUE PROCESS OF LAW—DEPRIVATION OF PROPERTY.

Laws 1910, c. 674, imposing on employers a liability for injuries to employés engaged in dangerous employments independent of negligence, and including railroads within such classification, is not unconstitutional as depriving the railroad companies of their property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 848–850, 857; Dec. Dig. § 301.*]

5. MASTER AND SERVANT (§ 87*)—INJURIES TO SERVANT—STATUTORY LIABILITY.

Since the Legislature may alter or repeal the common law, enlarge civil remedies, and fasten responsibility for injuries on persons against whom the common law gives no remedy, it has power to impose on masters employing workmen in dangerous callings the liability of insurers to some extent of the safety of their servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 138; Dec. Dig. § 87.*]

6. CONSTITUTIONAL LAW (§ 42*)—STATUTES—RIGHT TO OBJECT.

A master sought to be charged, independent of negligence, with liability for injuries to a servant under Laws 1910, c. 674, imposing such liability in certain dangerous occupations, could not claim that the statute was unconstitutional because its effect was to limit the amount recoverable in actions to recover damages for injuries resulting in death, in contravention of Const. art. 1, § 18; such objection being one available only to plaintiff.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

Action by Earl Ives against the South Buffalo Railway Company. On demurrer to defendant's answer. Demurrer sustained, and judgment for plaintiff on the pleadings.

Thomas C. Burke, for plaintiff.

Charles B. Sears, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

POUND, J.  The answer challenges the constitutionality of chapter 674, Laws 1910, entitled "An act to amend the labor law, in relation to workmen's compensation in certain dangerous employments." This chapter applies only to workmen engaged in manual or mechanical labor in certain employments declared by the act to be dangerous by reason of inherent, necessary, or substantially unavoidable risks to life or limb, in which it is deemed necessary to establish a new system of compensation for accidents to workmen.  Section 215.

Among such employments is included "(6) the operation on steam railroads of locomotives, engines, trains, motors or cars propelled by gravity or steam, electricity or other mechanical power, or the construction or repair of steam railroad tracks and roadbeds over which such locomotives, engines, trains, motors or cars are operated."  Section 215.

Plaintiff brings himself squarely under the provisions of this act by alleging facts that establish, as admitted by the answer, that, while employed by defendant as a switchman, he was injured in the prosecution of his work, without negligence on the part of the defendant, and "without serious or willful misconduct" on his part, but solely by reason of a necessary risk or danger of his employment, or one inherent in the nature thereof.  Section 217.  Prior to the enactment of the statute above cited, he would have been without remedy.  By virtue of its provisions he is entitled to recover according to a fixed scale of compensation without establishing that the employer is at fault in any way.  Section 219a.  The plaintiff demurs to the answer on the ground that it is insufficient in law on its face.

This act is based on the workmen's compensation act of England, and its enactment is due to the fact that the common law affords no available remedy for injuries occasioned by industrial accidents not attributable to the negligence of the employer.  Defendant maintains that under our system of constitutional government the incorporation into our law of the English law of workmen's compensation is beyond the powers of the Legislature, first, because the act in question deprives the defendant of liberty and property without due process of law, and denies it the equal protection of the laws in contravention of the fourteenth amendment of the United States Constitution, and article 1, § 6, of the Constitution of this state; second, because it violates the right of trial by jury guaranteed by article 1, § 2, of the Constitution of this state; third, because it limits the amount recoverable in actions to recover damages for injuries resulting in death in contravention of article 1, § 18, of the Constitution of this state.

It has well been said by Mr. Justice Brown of the Supreme Court of the United States writing the opinion of the court in Holden v. Hardy, 169 U. S. 366, at page 387, 18 Sup. Ct. 383, at page 386 (42 L. Ed. 780), that:

"While the cardinal principles of justice are immutable, the methods by which justice is administered are subject to constant fluctuation, and the Constitution of the United States, which is necessarily and to a large extent inflexible and exceedingly difficult of amendment, should not be so construed as to deprive the states of the power to so amend their laws as to make them conform to the wishes of the citizens as they may deem best for the public

welfare without bringing them into conflict with the supreme law of the land."

It is well established that statutes applicable solely to railroads do not deny to railroads the equal protection of the laws. A classification of "dangerous employments" for the purposes of the act must be upheld. Missouri Railway Company v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107. But the act is attacked chiefly because it imposes liability without fault.

Our jurisprudence offers examples of legal liability without fault, and the deprivation of property without fault being attributable to its owner. The law of deodands was such an example. The personification of the ship in marine law is another. Other examples are offered in the common-law liability of the husband for the torts of the wife, or liability of the master for the acts of his servant. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; Chicago, R. I. & P. Ry. Co. v. Zernecke, 183 U. S. 582, 22 Sup. Ct. 229, 46 L. Ed. 339. In the case last cited a statute making railroad companies liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury arose through the criminal negligence of the person injured, was upheld primarily on the ground that the railroad company, being a domestic corporation of Nebraska, accepted with its incorporation the liability so imposed by the laws of that state, and could not complain of it. But the court in its opinion cites with approval the opinion of the Supreme Court of Nebraska. That court said:

"The legislation is justifiable under the police power of the state, so it has been held. It was enacted to make railroad companies insurers of the safe transportation of their passengers as they were of baggage and freight; and no good reason is suggested why a railroad company should be released from liability for injuries received by a passenger while being transported over its line while the corporation must respond for any damages to his baggage or freight."

The Legislature may alter or repeal the common law. It may create new offenses, enlarge the scope of civil remedies, and fasten responsibility for injuries upon persons against whom the common law gives no remedy. Bertholf v. O'Reilly, 74 N. Y. 509, 30 Am. Rep. 323. It would seem to follow that it might make those who employ workmen in dangerous callings insurers to some extent of the safety of such workmen. The common law imposed upon the employé entire responsibility for injuries arising out of the necessary risks or dangers of the employment. The statute before us merely shifts such liability upon the employer. That the Legislature has the power to deal with the question of employers' liability on a basis other than fault is not clear beyond peradventure, but every presumption is in favor of the constitutionality of the act; nor do I find its constitutionality so doubtful as to warrant this court in holding that such action is not within the constitutional powers of the Legislature.

I have examined the authorities cited by the learned counsel for the defendant. They merely point out the shifting character of the border line between statutes which are upheld by the court as being a legitimate exercise of the legislative power to pass all manner of neces-

sary and wholesome acts for the protection and wellbeing of the public, although such acts may interfere with personal liberty and the right to do what one will with his own, and statutes which are held by the courts to interfere without warrant with the privilege of pursuing an ordinary trade or calling, and therefore to be unconstitutional and void. In the case of Lochner v. New York, 189 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, the prevailing and dissenting opinions contain a full discussion of the principles underlying the decision of such cases. The court held in that case that there is no reasonable ground on the score of health for interfering with the liberty of the person or the right of free contract by determining hours of labor in the occupation of a baker. The same court had already held in Holden v. Hardy, supra, that there was reasonable ground on the score of health for interfering with the liberty of the person and the right of free contract in determining hours of labor in the occupation of workingmen in smelters. In the former case the public good did not in the judgment of the court require the restrictive legislation. In the latter case it did. In the latter case Mr. Justice Brown says that:

"This court has not failed to recognize the fact that the law is to some extent a progressive science. * * * Classes of persons, particularly those engaged in dangerous or unhealthful employments, have been found to be in need of additional protection."

As to the objection to the statute that it limits the amount recoverable in death cases, it is enough to say that it is for the plaintiff to make the claim of unconstitutionality in this regard as it is the plaintiff alone is prejudiced thereby, and it does not lie in the mouth of the defendant to raise this objection to the statute.

Demurrer sustained, with costs, and judgment absolute for the plaintiff directed on the pleadings, with costs.