THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY
REUTHER, Relator, *v.* HERBERT S. SISSON, State Com-
missioner of Excise, and FRANK P. CALLISTER, as
Special Deputy Commissioner of Excise for Mon-
roe County, Respondents.

(Supreme Court, Monroe Special Term, October, 1917.)

Statutes — power of legislature to reduce the number of liquor tax
   certificates — authority to local commission to determine what ex-
   isting places shall be licensed — Liquor Tax Law.

   The legislature, having power to reduce the number of liquor
   tax certificates in the state by limiting the number in proportion
   to the population, for the purpose of reducing the existing
   number may authorize a local commission to determine, after
   investigation and inquiry, which existing places shall be licensed
   and which shall not be, and may provide that their determina-
   tion is final and conclusive.

HEARING on writ of certiorari to review a refusal to
grant a liquor tax certificate.

The relator conducted a place for the sale of intoxi-
cating liquors at the Lake Shore Hotel in the
town of Irondequoit under a liquor tax certificate
expiring October 1, 1917. On May 22, 1917,
the legislature amended the Liquor Tax Law by chap-
ter 623 of the Laws of 1917 so as to reduce the number
of certificates issued in towns of the state to the ratio
of one for each 500 inhabitants (§ 8, ¶ 9, subd. c), and in
order to reduce the number of certificates to corre-
spond with this ratio provided for the appointment of
three commissioners by the town board subject to the
approval of the State Commissioner of Excise (§ 8, ¶ 9,
subd. c (2)) who were to investigate on or before
August 10, 1917, as to the location of places within
the town where trafficking in liquors was engaged in
and inquire as to the conduct of such business at such
places and upon the completion of the investigation

and inquiry to determine as to the places within the town not exceeding the ratio of one for each 500 of the population thereof where trafficking in liquors should be continued for the year beginning October 1, 1917 (§ 8, ¶ 9, subd. c (3)), and prepare a written statement containing a description of the places where such trafficking in liquors should be continued and the places for which a liquor tax certificate should not be issued for the ensuing year. (Id.) It is declared by the statute that its purpose is to reduce on and after October 1, 1917, the number of places or premises in which the business of trafficking in liquors may be conducted to the ratio named and to prevent the issuance of any additional certificates until the ratio has been exceeded. § 8, ¶ 9, subd. c (7). The determination of the commission was made final and conclusive. § 8, ¶ 9, subd. c (4). There were thirty places for which liquor tax certificates had been issued in the town of Irondequoit when the statute went into effect and it reduced the number for which certificates could lawfully be issued for the year beginning October 1, 1917, to nine. The function of the commission therefore was to select nine places out of the thirty holding liquor tax certificates for the issuance of certificates for the year beginning October 1, 1917. The relator's place was not selected and he has brought this proceeding contending that the statute is unconstitutional in that it vests in the commission an arbitrary authority to select the places for which certificates should be issued and that his constitutional and statutory rights have been violated.

Henry W. Martens (John F. Kinney, of counsel), for relator.

Harry D. Sanders (Clarence Macgregor, of counsel), for respondents.

Rodenbeck, J.  The statute attacked by the relator seeks to regulate the sale of intoxicating liquors. Among other provisions it reduces the number of places to which certificates may be issued in a town to a ratio not greater than one in 500 of population.  This the legislature had the undoubted right to do since it possessed the power to prohibit such sale entirely.  It is not this feature of the law that the relator complains of but the method adopted by the legislature in determining which of the places in his town holding certificates should be entitled to them after the expiration of the year for which they were issued. .  It will be observed that the statute does not terminate any existing certificate and is therefore not subject to attack on the ground that it has taken away any right or divested the relator of any property under his certificate.  The claim is that the state can not authorize a commission in the manner provided to select nine out of the thirty places holding certificates in the town and refuse one to the relator.  The claim of the relator must be based upon some right or privilege guaranteed to him by the laws or Constitution of the state or of the United States.

In determining whether any such right has been interfered with it is necessary to bear in mind that the business in which he was engaged is subject not only to regulation but to prohibition by the state authorities.  *Bertholf* v. *O'Reilly,* 74 N. Y. 508, 520; *Metropolitan Board of Excise* v. *Barrie,* 34 id. 657; *Lloyd* v. *Dollison,* 194 U. S. 445, 449; *Rippey* v. *Texas,* 193 id. 504.  In considering whether he has been deprived of the equal protection of the laws or of any property without due process of law it must be remembered that there is " no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United

States.'' *Crowley* v. *Christensen*, 137 U. S. 86, 91; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Jacobs Pharmacy Co.* v. *City of Atlanta*, 89 Fed. Repr. 244. The right of the state to regulate and prohibit traffic in liquors goes to such an extent that it may prohibit the manufacture and sale of ardent spirits to be used as a beverage without compensation for the diminution in the value of property whose chief value consists in its fitness for such manufacturing purposes. *Mugler* v. *Kansas*, 123 U. S. 623.

There was no right or privilege to sell intoxicating liquors attaching to relator's place of business or to himself under the Constitution, laws or vote of the electors of the town which could not be revoked after the expiration of his certificate by a change in the statute under which his license was issued. *Matter of Hering*, 133 App. Div. 293. He was given ample opportunity to dispose of any stock of liquors he may have had on hand and the question of the appropriation of such property is not involved. *Wynehamer* v. *People*, 13 N. Y. 378. The police power cannot be contracted away. *Beer Co.* v. *Massachusetts*, 97 U. S. 25. It extends to any measures that the legislature may reasonably deem necessary to protect public health, public welfare and public safety. The extent of the regulation depends upon the occupation. Even lawful occupations may be regulated by the legislature. Where the occupation may be entirely prohibited the power of regulation is correspondingly enlarged. ''All property is held subject to the power of the state to regulate, or control, its use, in order to secure the general safety, or the general welfare.'' *People* v. *New York Carbonic Acid Gas Co.*, 196 N. Y. 421, 436. ''The impossibility of setting the bounds of the police power has up to this time prevented any court from attempting it.'' *People* v. *Lochner*, 177 N. Y. 145,

152. The legislature may prescribe the regulations in statutory form and issue licenses through its own officers but it may also leave these regulations and the issuance of licenses to the discretion of local authorities. In this instance it has provided for the creation of a commission to be selected by the town board, residents of the town, who should be persons of good standing in the community and familiar with the conditions in the town. It directed that this commission should investigate and inquire as to the places where liquor was sold and it left it to this commission to determine which nine places in the town should be entitled to certificates under the provision in the statute reducing the number to correspond to one for every 500 of inhabitants. It vested in this commission not an arbitary authority but a discretion to select the places after investigation and inquiry. The legislature might have exercised this discretion itself or through its officers but there is no objection to vesting this discretion in a commission appointed as provided by the act. *Village of Saratoga Springs* v. *Saratoga Springs Gas, Electric Light & Power Co.,* 191 N. Y. 123; *Lieberman* v. *Van De Carr,* 199 U. S. 552; *Wilson* v. *Eureka City,* 173 id. 32; *Fischer* v. *St. Louis,* 194 id. 361; *Stanton* v. *Board of Supervisors,* 191 N. Y. 428. Numerous statutes might be cited which have been sustained by the courts where the authority to license has been vested in local officers in their discretion. It would be difficult to conduct the affairs of municipalities unless the legislature possessed this power of delegating administrative functions. The discretion vested in the commission is not open to question. The rejection may have been based upon the ground of the concentration of the certificates in one locality. The relator's place of business is at a summer resort where a large proportion of the places

28

for the sale of liquor in the town of Irondequoit are located. The commission may have been prompted in eliminating relator's place by the desire to distribute more widely the places where liquor might be sold or the exercise of their discretion may have been based upon considerations of the suitability of the relator to conduct the business. The statute confided this determination to the commission after investigation and inquiry. It did not authorize them to act arbitrarily. There is no presumption that they did. The duty imposed upon them required them to eliminate at least twenty-one of the places where liquor was sold and it is to be presumed that they acted in compliance with the statute. *Lieberman* v. *Van De Carr, supra.*

" The constitutionality of administrative discretion in the matter of granting or refusing liquor licenses is generally conceded." Freund Police Power, § 652. " The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the State." *Crowley* v. *Christensen, supra.* In *Matter of Armstrong,* 65 App. Div. 123, a statute authorizing and empowering the police department to grant licenses for theatres without specification as to the qualifications of the licensees was sustained. In *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473, a statute was upheld which authorized the mayor of New York to grant licenses to auctioneers without limitation as to qualifi-

cations of applicants. In *People ex rel. Hoy* v. *Mills,* 91 Hun, 144, the refusal to grant a license to sell intoxicating liquors upon the ground that there was a sufficient number of places already licensed was sustained. In *Roderick* v. *Whitson,* 51 Hun, 620, an ordinance was upheld which required a permit of the president of a village for any person to beat a drum or tabourine or make any noise with an instrument upon a public street. A statute prohibiting the sale of intoxicating liquors in drug stores has been upheld. *Jacobs Pharmacy Co.* v. *City of Atlanta, supra.* In *Quincy* v. *Kennard,* 151 Mass. 563, it was admitted that the board of health had authority to prohibit the keeping of swine in the town of Quincy but it was contended that the legislature could not make the right dependent upon a permit of the board of health, with reference to which Mr. Justice Holmes said: " We are at a loss to see how it affects the validity of the order that the board expressly reserved to themselves a power to do what they could have done even if the prohibition had been absolute, or how the defendants are put in a worse position by the order contemplating the possibility that the board of health may grant them a written permit than if it had excluded that possibility." P. 563.

In *Davis* v. *Massachusetts,* 167 U. S. 43, an ordinance denying the right to make a public address upon any public street without a permit in the city of Boston was sustained with the remark, very pertinent in the case at bar: " The right to absolutely exclude all right to use, necessarily includes the authority to determine under what circumstances such use may . be availed of, as the greater power contains the lesser." P. 48.

In *Wilson* v. *Eureka City, supra,* an ordinance was sustained which vested in city officers the authority

to say whether a permit should be granted to move a building through a public street against a contention similar to that made here that it committed the rights of the plaintiff to " unrestrained discretion."

In *Fischer* v. *St. Louis, supra,* an ordinance was sustained which gave the municipal assembly the power to grant permission to maintain a dairy and cow stable in the city of St. Louis, Mr. Justice Brown saying: "Defendant's main contention, however, is that, by vesting in the municipal assembly the power to permit the erection of dairy and cow stables to certain persons, a discrimination is thus declared in favor of such persons and against all other persons, and the equal protection of the laws denied to all the disfavored class. * * * We do not regard the fact that permission to keep cattle may be granted by the municipal assembly as impairing in any degree the validity of the ordinance, or as denying to the disfavored dairy keepers the equal protection of the laws. * * * Such distinctions are constantly made the basis for licensing one person to sell intoxicating liquors and denying it to others * * *. We have no criticism to make of the principle of granting a license to one and denying it to another, and are bound to assume that the discrimination is made in the interest of the public, and upon conditions applying to the health and comfort of the neighborhood. * * * The only alternative to the allowance of such exceptions would be to make the application of the ordinance universal."

In *Matter of Hoover*, 30 Fed. Rep. 51, the applicants for licenses to sell spirituous liquors were required to apply to the ordinary of the county or to the county commissioners of the county where such existed, who had the power " to grant or refuse such application." The contention was made that the statute violated the fourteenth amendment of the Constitution of the

United States with reference to which the court said: '' Now, if the state may prohibit the sale of liquor altogether, since it is clearly not a ' privilege or an immunity ' in the meaning of the constitution, may it not authorize the sale on such terms, by such persons, and at such places, as it thinks proper? And, if it may do this directly, may it not delegate to others the exercise of the power? It has simply delegated a portion of its sovereignty to the county commissioners of Chatham county. The commissioners, in the exercise of that sovereignty, refuse a license to the petitioner. The discretion must rest somewhere. The state might have exercised it. It intrusts its discretion to the board of county commissioners, and, as I have said, by the terms of the grant, this discretion is final, and not reviewable. This power is inseparable from the sovereignty of the state.'' P. 55.

These and a long line of similar cases, which might be cited, are sufficient to show that the legislature having the power to prohibit the sale of intoxicating liquors entirely may determine through a local commission after investigation and inquiry who shall exercise and enjoy that right after the expiration of existing licenses particularly where in the exercise of its police powers it determines to reduce the number of licenses.

The legality of the plan for reducing the number of certificates in the town is substantially the same in principle as if the commissioners had been authorized to grant additional certificates after investigation and inquiry. It was not necessary for the legislature to prescribe that the licensees should be of '' good moral character'' or ''suitable persons.'' Even if such qualifications had been inserted in the statute how would that help the relator if only nine licenses could be

granted and he were denied one? Has he the right to insist that some one else of ''good moral character'' or some other ''suitable person'' should step aside in his favor? There are many more than nine ''suitable persons'' and many more than nine persons of ''good moral character'' in the town, no doubt, who would like to have a license. Could the decision between the applicants be made in a more fair and reasonable manner than that provided in the statute by a commission of his own townsmen?

It argues against the power of the legislature to reduce the number of licenses in the town to say that the relator, being a suitable person, is entitled to a license. If he is entitled to a certificate then every one of the twenty who were left out who are suitable persons is likewise entitled to a certificate. Where shall the line be drawn? If the statute had provided, as it legally might, that there should be but one license in the town, it would be absurd for the relator to say that he should be selected and that it was unfair to leave the selection to a commission as between him and his fellow townsmen in the same business. Admitting that the relator is eminently well qualified to carry on the business, it is a sufficient answer to him to say that there were nine other persons in the business equally well qualified whom the commission have selected in preference to him and perhaps without any objections to him or to his place of business.

If this is not a sound conclusion, then the relator is entitled to a certificate and all the remaining twenty who are suitable persons who have been denied a certificate are each entitled to one and the legislature by this course of reasoning is denied the right to reduce the number of certificates although it has the undoubted power to abolish the traffic in liquors entirely. The legislature has the power to reduce the number of

liquor licenses in the state by limiting the number that shall exist in proportion to the population and for the purpose of reducing the existing number may authorize a local commission to determine after investigation and inquiry which places shall be licensed and what places shall not be licensed and to provide that their determination shall be final and conclusive. *Slaughter-House Cases,* 16 Wall. 36; *Matter of Hoover, supra; United States* v. *Roman,* 33 Fed. Repr. 117. Every presumption is in favor of the constitutionality of the statute. *People ex rel. Rochester* v. *Briggs,* 50 N. Y. 553, 558. The fourteenth amendment of the federal Constitution does not abrogate or impair the police powers of the states. *Barbier* v. *Connolly,* 113 U. S. 27. The constitutionality of the statute is open to the courts but the exercise of the discretion of the commission is not subject to review. The statute makes it final and conclusive and the purpose is to avoid substituting judicial judgment for administrative discretion. The test is the violation of the fundamental law. The motives of the legislature can not be inquired into. It is not sufficient that the statute may seem unfair. With the wisdom of the legislation the courts have nothing to do. If the statute does not violate the Constitution the remedy is in the legislature and not in the courts. The writ should be dismissed.

Writ dismissed.