Schenck, J.
The applications herein are for peremptory-mandamus orders directing the State Alcoholic Beverage Control Board to issue licenses to each of the petitioners to sell liquors and wines at retail for off-premises consumption.
The petitioners herein filed separate applications for licenses with the New York city beverage control board, which applications were forwarded to the State Control Board for action. At the time of the institution of these proceedings, final action had not been taken by the State Board and no formal disapproval had been made. Since that time, however, the Board had made a final disposition of these applications and has sent a formal notice of disapproval to each applicant.
The petitioners here hold leases of separate premises situate in the city of New York and seek licenses to sell liquors and wines at retail for off-premises consumption, and ask that rule 49 adopted by the State Board be declared invalid and inoperative. Rule 49 provides: “ No retail license for off-premises consumption shall be granted for any premises which shall be located within 1,500 feet of any premises holding a similar license, except that in cities having less than 1,000,000 in population such license may be granted for premises which are not less than 700 feet distant from any other premises so licensed.”
It is the contention of the petitioners that they had complied with all the requirements of the city board and the State Board *253 at the time of filing their respective applications for licenses and that the refusal of the State Board to grant the same is arbitrary and unreasonable.
The Alcoholic Beverage Control Law (Laws of 1933, chap. 180) relating to the manufacture, sale, distribution and regulation of beer and alcoholic liquors containing not more than a maximum of three and two-tenths per cent of alcohol, became effective April 12, 1933. The purpose of the law is stated in the declaration of policy contained in section 70 thereof, which reads as follows:
“ § 70. Declaration of policy relative to number of licenses. The following restrictions upon and regulations of, the brewing and sale of beer are hereby established for the reason that the manufacture or sale of beverages having any alcoholic content whatever is or may be conducive to the manufacture or sale of unauthorized alcoholic beverages; and, therefore, the provisions of this chapter are enacted as a safeguard to temperance and in order to promote obedience to law and more effectively to prevent the unlawful manufacture and sale of beverages now prohibited by federal law. It is hereby declared to be the public policy of the state that the number of licenses in this state to traffic in beer should be restricted and the state board empowered to determine whether public 'convenience and advantage will be promoted by issuing such licenses, by increasing or decreasing the number thereof; and that in order further to carry out the policy hereinbefore declared, the number of licenses shall be restricted. For such purposes, the state board is hereby given discretion to determine the number of licenses, the location thereof and the persons to whom they shall be issued, subject to the right of judicial review hereinafter provided.”
Section 75 of the Alcoholic Beverage Control Law provides that applications for licenses for off-premises consumption shall be filed with the county or city board and if said county or city board shall approve such application, it shall forward the same to the State Board, together with the license fee, and that the State Board may then issue, or may refuse to issue, such license.
In anticipation of the repeal of the Eighteenth Amendment, the Legislature amended the Alcoholic Beverage Control Law (Laws of 1933, chap. 180) by repealing section 132-a thereof and substituting a new section, known as 132-a, by chapter 819 of the Laws of 1933, which became effective August 29, 1933. This amendment was passed at a special session of the Legislature, in August, 1933, and provides for the temporary control and regulation of the manufacture, sale and distribution of liquors and wines, during what is generally referred to as the interim period,” *254 which, is that period of time elapsing between the date of the repeal of the Eighteenth Amendment and April 1, 1934. By said chapter 819 of the Laws of 1933, generally termed the “ Liquor Authority,” provision is made for the issuance of licenses for the manufacture and sale of liquors and wines, and section 132-a thereof provides: “ All of the provisions of this chapter relative to beer, except as otherwise expressly provided in this section, shall apply, so far as they may be or can be made applicable, to the control, regulation, manufacture, sale and distribution of liquors and wines.”
Section 132-a further provides that in order to foster and promote temperance in the consumption of liquors and wines and for the purpose of instituting a sound and careful control and regulation of the manufacture, sale and distribution of liquors and wines during the interim period, the State Board shall, in addition to its other powers, have the power: “ (e) To adopt such rules and regulations and issue such orders for the control and regulation of the manufacture, sale and distribution of liquors and wines, including the location, type and character of the premises to be licensed and the hours and days and conditions for their sale, as will effectively insure temperance in the consumption of liquors and wines in the State and promote obedience to law and order.” (§ 132-a, subd. 2, K e.)
The State Board thereafter and under that authority adopted certain rules and regulations relating to the issuance of licenses for the manufacture and sale of liquors and wines.
By the Liquor Authority Law the State Board was given power “ to fix the number of distillers, wholesalers and retailers of liquors and wines to be licensed within the state,” and having promulgated rule 49, which provides that in a city having a population of over 1,000,000, no premises shall be licensed which is located within 1,500 feet of any licensed premises, the Board adopted a procedure to be followed with respect to acting upon applications for retail liquor and wine stores. Such applications were filed between the period from November 10 to November 16, 1933, and all applications for licenses on each street or avenue were listed according to their street numbers. After the investigators’ reports had been received regarding the investigation of the applications on such street or avenue, the Board then proceeded to approve applications in the order in which they were located on such street or avenue, in accordance with the 1,500-foot rule in so far as the same was applicable. Applications for licenses for premises which were within 1,500 feet of premises licensed were put aside temporarily until the Board was in a position to determine whether the number of licenses issued by the application of the 1,500-foot rule was *255 sufficient to meet the needs and requirements of the respective communities in which the licensed premises were located. In other words, the applications were not considered in the order of filing, but all applications for licenses on a given street were considered at one time and the Board exercised a discretion in its determination as to the location of the premises which should receive licenses. In his answering affidavit the Chairman of the Board alleges: “ In the judgment of the State Board and in the exercise of the powers granted under the law for the location of licensed premises and the number of licenses to be issued, the State Board did not deem it advisable to issue a license for the premises applied for herein by this petitioner.”
These petitioners contend that the action of the Board was capricious, arbitrary and unreasonable in that priority of filing application has not been considered; that the 1,500-foot rule is contrary to the policy of the statute and that the proximity of stores licensed to sell liquor for off-premises consumption will in no wise tend to safeguard temperance and promote obedience to the law.
It is further contended that since the repeal of the Eighteenth Amendment, the business of selling liquor for off-premises consumption has become a lawful business, in which these petitioners are entitled to engage, and as petitioners possess the necessary qualifications for licenses, the State Board is powerless to refuse their applications or make any rule or regulation interfering with their rights.
That the State has the power to control, regulate or prohibit the business of dealing in intoxicating liquors within its boundaries may not be seriously questioned. (Foster v. Kansas, 112 U. S. 201; License Cases, 5 How. [U. S.] 504; Delamater v. South Dakota, 205 U. S. 93; Beer Co. v. Massachusetts, 97 id. 25; People ex rel. Doscher v. Sisson, 222 N. Y. 387; People ex rel. Beuther v. Sisson, 101 Misc. 429.)
In Crowley v. Christensen (137 U. S. 86) Mr. Justice Field, writing for the court, said: “ There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legis *256 lative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the State; nor is it one which can be brought under the cognizance of the courts of the United States.”
The Legislature, having the right to regulate or prohibit the business of trafficking in liquor, may delegate to an officer, to a board, or to a commission the power to determine facts and conditions upon which the operation of the statute depends, without violating the constitutional prohibition against the delegation of legislative functions. (Lieberman v. Van De Carr, 199 U. S. 552; People ex rel. Doscher v. Sisson, supra; Matter of Hoover, 30 Fed. 51; People ex rel. Reuther v. Sisson, supra; Cincinnati, etc., R. R. Co. v. Commissioners, 1 Ohio St. 77.)
The rules adopted by the State Board pursuant to and within valid statutory authority are to be considered as the act of the State. (People ex rel. Knoblauch v. Warden, etc., 216 N. Y. 154; Matter of Stubbe v. Adamson, 220 id. 459; People ex rel. Doscher v. Sisson, supra.) The Legislature could have prescribed in the statute similar regulations. It could have issued licenses through its officers. It could have performed any of the acts now being performed by the State Board, but for obvious reasons, it chose to accomplish the purposes of the statute by delegating to the State Board the power to determine the number of licenses and to make rules and regulations for the issuance thereof, and for the control of the liquor traffic generally. While the Legislature could have exercised its own discretion, it was proper to vest this discretion in a board, duly appointed pursuant to the provisions of the statute. (Village of Saratoga Springs v. Saratoga Springs Gas, Electric Eight & Power Co., 191 N. Y. 123; Lieberman v. Van De Carr, supra.)
In People ex rel. Doscher v. Sisson (supra) the Legislature by the enactment of the so-called Liquor Tax Law of 1917, gave to the Excise Commission certain discretionary powers relative to the sale of liquor. Collin, J., writing the opinion for the court, said: “ The legislature may validly appoint an executive agency to examine into and determine whether or not the facts existing warrant, as provided by the legislature, the operation or a suspension of the operation of a statute. The legislature, in the instant case, enacted on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to an executive agency the duty of bringing about the result it desired. The enumerated places and the proximities to them were not permanent. They might cease or arise. Conditions in the proximities *257 differed and new conditions might arise. The legislative purpose of securing the public safety and interest, through suspension of selling, could be best accomplished by an executive agency. The power to suspend was not legislative and was executive. The statement of Judge Ranney through clarity, accuracy and frequent citation has become classic: 1 The true distinction is between the delegation of the power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.’ (Cincinnati, etc., R. R. Co. v. Commissioners, 1 Ohio St. 77.)”
Again, in Lieberman v. Van De Carr (supra) the court held that the power to delegate discretion to a board to grant or withhold permission to carry on a business which is the subject of police regulation is sustained by the great weight of authority, and Mr. Justice Day, writing for the court, said: “ These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative .boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the State is not violative of rights secured by the Fourteenth Amendment. There is no presumption that the power will be arbitrarily exercised, and when it is shown to be thus exercised against the individual, under sanction of state authority, this court has not hesitated to interfere for his protection, when the case has come before it in such manner as to authorize the interference of a Federal court.”
The discretion given to the State Board relates to the execution of the statute and not to its creation, and these statutes having for their purpose the regulation of the beer, wine and liquor traffic do not delegate to the board legislative power in violation of the Constitution.
By the enactment of the Alcoholic Beverage Control Law, and the amendment which brought within the statute the control of traffic in liquors (Laws of 1933, chap. 819), it is evident that the clear intention of the Legislature was to limit the number of licenses and to restrict the character of the premises to be licensed and the hours of sale so as to “ effectively insure temperance in the consumption of liquors and wines in the state and to promote obedience to law and order.” (§ 132-a, subd. 2, f e.) The 1,500-foot rule adopted by the State Board has some reasonable relation to the object sought to be accomplished by the statute. It is true that the State Board might have promulgated regulations that would *258 better accomplish the object sought, i. e., reduction of the number of licensed places. It might have based its limitation on population. It might have provided that liquor could only be sold at drug stores or grocery stores. It saw fit, however, to adopt a proximity rule requiring the spacing of so-called retail liquor stores which were allowed to carry on business on main thoroughfares in business sections.
The State Board could not act arbitrarily or capriciously and there is no presumption that it did so act. It may be that the State Board did not exercise the power conferred upon it by the Legislature with the same wisdom that some other board or officer would have demonstrated in a similar circumstance. It may be that it should have adopted some other formula in arriving at the number of licenses to be issued or some other method of allocating the premises to be licensed, but unless its action was clearly arbitrary and unreasonable, the courts will not interfere.
In People ex rel. Reuther v. Sisson (supra) we have a situation very similar to that presented in these applications. There, the proceeding was for a certiorari order to review a refusal of the State Excise Commission to grant a liquor tax certificate. The Legislature amended the Liquor Tax Law in 1917 for the purpose of reducing the number of certificates issued, and provided for the appointment by each town board of three commissioners who were to investigate as to the location of places within the town where liquor was being sold and inquire as to the conduct of such business, and thereafter to determine as to what places within the town, not exceeding the ratio of one for each 500 of population, where the sale of liquor should be continued. The determination of the commissioners was made final and conclusive. The relator, having ascertained that his place was not selected, brought a proceeding to declare the statute unconstitutional in that it vested in the commissioners arbitrary authority to select the places for which certificates should be issued, and that his constitutional and statutory rights had been violated. Bodenbeck, J., in a well-considered opinion, says (at p. 438): “ It argues against the power of the Legislature to reduce the number of licenses in the town to say that the relator, being a suitable person, is entitled to a license. If he is entitled to a certificate then every one of the twenty who were left out who are suitable persons is likewise entitled to a certificate. Where shall the line be drawn? If the statute had provided, as it legally might, that there should be but one license in the town, it would be absurd for the relator to say that he should be selected and that it was unfair to leave the selection to a commission as between him and his fellow townsmen in the same business. Admit *259 ting that the relator is eminently well qualified to carry on the business, it is a sufficient answer to him to say that there were nine other persons in the business equally well qualified whom the commission have selected in preference to him and perhaps without any objections to him or to his place of business.
“ If this is not a sound conclusion, then the relator is entitled to a certificate and all the remaining twenty who are suitable persons who have been denied a certificate are each entitled to one and the Legislature by this course of reasoning is denied the right to reduce the number of certificates although it has the undoubted power to abolish the traffic in liquors entirely. The Legislature has the power to reduce the number of liquor licenses in the State by limiting the number that shall exist in proportion to the population and for the purpose of reducing the existing number may authorize a local commission to determine after investigation and inquiry which places shall be licensed and what places shall not be licensed and to provide that their determination shall be final and conclusive. (Slaughter-House Cases, 16 Wall. 36; Matter of Hoover, 30 Fed. Rep. 51; United States v. Roman, 33 id. 117.) Every presumption is in favor of the constitutionality of the statute. (People ex rel. Rochester v. Briggs, 50 N. Y. 553, 558.) The Fourteenth Amendment of the Federal Constitution does not abrogate or impair the police powers of the States. ( Barbier v. Connolly, 113 U. S. 27.) The constitutionality of the statute is open to the courts but the exercise of the discretion of the commission is not subject to review.”
In their endeavor to point out that the State Board has acted in an arbitrary and unreasonable manner, petitioners call attention to the provisions of the regulations, which, while requiring liquor stores for off-prémises consumption to be located on main thoroughfares and within the provisions of the 1,500-foot rule, there is no such requirement relative to the issuance of licenses to hotels, clubs and restaurants where liquor may be sold for consumption on the premises. Petitioners maintain that to make the 1,500-foot rule applicable to premises where liquor is sold for off-premises consumption and not to places where liquor may be freely sold for consumption on the premises is an unfair discrimination. The court, however, in a mandamus proceeding will not substitute its judgment for that of an administrative body. I am not unmindful of the fact that the sale of liquor in a hotel or restaurant may tend to foster intemperance quite as much as the sale of liquor in a licensed store for off-premises consumption. Nor am I prepared to agree that the rules and regulations adopted by the board entirely meet the situation or afford even an approximate solution of the *260 liquor traffic problem, but these rules and regulations have some reasonable relation to the object sought to be accomplished by the statute, and unless clearly arbitrary, the court will not interfere even though such rules and regulations or the application thereof may appear to be unwise or unjust to some. (Clark v. Kansas City, 176 U. S. 114.)
The petitioners maintain that the board should have acted upon the applications in order of their priority of fihng. That is purely a matter of administration. Instead of adhering to a priority rule, the board adopted a method whereby all applications received between certain dates were segregated as to streets or avenues, and each application on such street or avenue considered at one time. Again this was a matter of executive discretion and there does not seem to have been an abuse of discretion.
The Legislature has intrusted the control board with the discretionary power to determine, in carrying out the provisions of the statute, what premises should be licensed. Neither the rules adopted by the State Board nor the method employed in their enforcement may be termed arbitrary or capricious. The right to sell liquor is not one of the privileges and immunities of citizens of the United States which by the Fourteenth Amendment the States were forbidden to abridge. As set forth in the opinion in Matter of Hoover (supra): “ Now, if the State may prohibit the sale of liquor altogether, since it is clearly not a ‘ privilege or an immunity ’ in the meaning of the Constitution, may it not authorize the sale on such terms, by such persons, and at such places, as it thinks proper? And, if it may do this directly, may it not delegate to others the exercise of the power? It has simply delegated a portion of its sovereignty to the county commissioners of Chatham county. The commissioners, in the exercise of that sovereignty, refuse a license to the petitioner. The discretion must rest somewhere. The State might have exercised it. It intrusts its discretion to the board of county commissioners, and, as I have said, by the terms of the grant, this discretion is final, and not reviewable.”
The denial of these applications will in no wise prejudice any right these petitioners may have to review the action of the State Board by certiorari as provided by section 87 of the Alcoholic Beverage Control Law.
Orders may be entered denying each separate application, without costs.