In the Matter of MICHAEL J. BARRY, Appellant, against JOHN F. O'CONNELL et al., Individually and as Members of the State Liquor Authority, Respondents.

Argued April 3, 1951; decided July 11, 1951.

*Monroe I. Katcher, II,* and *Jerome S. Heller* for appellant. I. Respondents' finding No. 1 states a mere conclusion without specific factual basis and has been tacitly abandoned by respondents as a reason for license disapproval. (*Securities & Exch. Comm.* v. *Chenery Corp.,* 332 U. S. 194; *Heitmeyer* v. *Federal Communications Comm.,* 95 F. 2d 91; *Matter of Pollock* v. *Board of Regents,* 266 App. Div. 696, 291 N. Y. 720; *Matter of Muoio* v. *O'Connell,* 276 App. Div. 1050.) II. Respondents' disapproval herein is based upon a ground which, under section 2 of the Alcoholic Beverage Control Law, respondents may not consider. Respondents possess statutory discretion to determine public " convenience " and " advantage ", but possess no discretion whatever to legislate and apply a nonstatutory standard of public " need ". (*Matter of Yacht Club Catering* v. *Bruckman,* 276 N. Y. 44; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, 300 N. Y. 658; *Matter of Picone* v. *Commissioner of Licenses,* 241 N. Y. 157; *Matter of Smith* v. *Morgan,* 253 App. Div. 239; *Tru-Blu Beverage Co.* v. *Doran,* 32 F. 2d 971; *Lord* v. *Delaware Liq. Comm.,* 17 A. 2d 230 [Del.].)

*Alvin McKinley Sylvester* for respondents. I. The material facts relating to the location of other liquor stores, population, character of the neighborhood and the proposed operation of the

confectionery and liquor stores as a joint enterprise were undisputed. Only a question of law was involved and the granting of a jury trial by Special Term was erroneous. (*Matter of Snetlage* v. *O'Connell*, 271 App. Div. 1015, 297 N. Y. 707; *Matter of Pichacz* v. *O'Connell*, 272 App. Div. 755, 297 N. Y. 981; *Matter of Glintenkamp* v. *O'Connell*, 271 App. Div. 795, 296 N. Y. 806.) II. Proximity of appellant's premises to similarly licensed liquor stores, and the fact that it was proposed to operate a confectionery store in the same building and in conjunction with the liquor store, constituted ample basis for the reasonable exercise of discretion by the Authority in refusing to issue this license. (*Matter of Snetlage* v. *O'Connell*, 271 App. Div. 1015, 297 N. Y. 707; *Matter of Glintenkamp* v. *O'Connell*, 271 App. Div. 795, 296 N. Y. 806; *Matter of Pichacz* v. *O'Connell*, 272 App. Div. 755, 297 N. Y. 981; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330; *Handler* v. *Doelger Brewing Corp.*, 173 Misc. 173, 259 App. Div. 846; *Matter of Roccaforte* v. *O'Connell*, 271 App. Div. 831, 296 N. Y. 938; *Matter of Finn* v. *O'Connell*, 271 App. Div. 896, 297 N. Y. 607.)

LEWIS, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the State Liquor Authority which disapproved an application by the petitioner-appellant for a license to sell liquor for off-premises consumption at a site in the hamlet of Verplanck, Westchester County, New York.

Although Verplanck has a population of between 2,100 and 2,350, which increases to 5,000 in the summer season, there is in that unincorporated community no licensed store for the sale of liquor for off-premises consumption. The nearest stores of that character are in Buchanan — a village one and one-half miles distant having a population of 1,600, where two licensed stores are located — and Peekskill, four miles distant where there are eight licensed liquor stores.

Upon a petition for a retail liquor license filed by the present appellant with the Westchester County Alcoholic Beverage Control Board, that board, after a full investigation, determined that public convenience and advantage in Verplanck would be served by the issuance of the license for which the petitioner had applied. After noting its approval thereupon, the local

board forwarded the petition to the State Liquor Authority with a report of its investigation, a digest of its findings and other related data submitted in connection therewith. Thereafter, following a hearing, the Authority disapproved the application by sending to the petitioner the following written notice:

" NOTICE OF DISAPPROVAL

" Please take notice that your application for a retail license is hereby disapproved by the State Liquor Authority for the following reasons:

" 1. Under all the circumstances in this case it is not conducive to the proper regulation and control of the distribution and sale of alcoholic beverages to issue this license.

" 2. In view of the type of neighborhood, there is no need for a package store at the location applied for.

" A request will be forwarded to the Comptroller to have refunded to you the license fee deposited at the time of filing your application. As prescribed by the Alcoholic Beverage Control Law, this refund is subject to a deduction of $15.00 (135.00).

By order of

STATE LIQUOR AUTHORITY
JOHN F. O'CONNELL
Chairman."

Exercising the right given by subdivision 1 of section 121 of the Alcoholic Beverage Control Law (hereinafter referred to as the " A. B. C. Law ") the petitioner instituted the present proceeding to review the adverse determination by the Authority. At Special Term the petitioner's application was granted to the extent of directing a jury trial in accord with section 1295 of the Civil Practice Act and the court denied the Authority's motion to strike from the petition and reply certain exhibits annexed thereto. At the Appellate Division the order of Special Term was reversed on the law and the proceeding was dismissed.

Mindful that, by its enactment of the A. B. C. Law, the Legislature declared its purpose to be to provide for the location of off-premises liquor stores in neighborhood communities where they will most effectively serve " *public convenience and advantage* " (§ 101-c, subd. 1, *id.*, emphasis supplied), and that the

statute " * * * shall be so construed as to assure that the policy of the state and the intent and purpose thereof will be carried out " (§ 150 *id.*), we do not regard the ruling by the respondent Authority — comprised, as it is within the " NOTICE OF DISAPPROVAL ". quoted above — to be a compliance with the declared legislative " intent and purpose " which prompted the enactment. (See A. B. C. Law, § 101-c, subd. 1.)

Nor is it a compliance with what we believe to have been the Legislature's " intent and purpose " when — anticipating a problem such as that with which we are now concerned — it made the following mandatory provision: " * * * In the event that the liquor authority refuses to issue such license it shall state and file in its office its reasons therefor * * * " (§ 54, subd. 2 *id.*). We assume, as we must, that the " reasons " stated by the Authority to the petitioner as the basis of its action are those " reasons " which, pursuant to statute, were filed in its office.

Accordingly, as the " NOTICE OF DISAPPROVAL ", quoted in full above, constitutes the only formal notice sent to advise the applicant of action by the Authority that his application for a license had been denied, our inquiry, as a court of review, goes to the legal adequacy of that determination and the stated " reasons therefor ". To that end the Legislature, in framing the statute with which we are concerned, was careful to make the following provision (A. B. C. Law, § 121, subd. 1):

" *Review by courts.* The following actions by the liquor authority shall be subject to review by the supreme court in the manner provided in article seventy-eight of the civil practice act or by any other appropriate remedy * * *:

" 1. Refusal by the liquor authority to issue a license or a permit. * * * "

In the course of performing our function as a court of review we have had in mind a statement made by high authority in its consideration of a kindred problem: " * * * a reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by sub-

stituting what it considers to be a more adequate or proper basis." ( *Securities & Exch. Comm.* v. *Chenery Corp.,* 332 U. S. 194, 196.)

Concluding, as we do, that the grounds for the Authority's action, as stated in its " NOTICE OF DISAPPROVAL ", are inadequate in that they do not meet the requirement of subdivision 2 of section 54 (quoted above), we note first that the two " reasons " given by the Authority are conclusory in character and entirely lacking in a statement of the factual considerations which led to those conclusions. Standing alone those conclusions, in our view, are not the " reasons therefor " mandated by the statute. They do not " * * * enable the parties and any appellate court intelligently to determine whether the decision follows as a matter of law from the facts stated as its basis and whether the findings of fact have any substantial support in the evidence." (*Matter of New York Water Service Corp.* v. *Water Power & Control Comm.,* 283 N. Y. 23, 30; and see *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488, 498; *Matter of Collins* v. *Behan,* 285 N. Y. 187, 188.)

That infirmity — the lack of a statement of facts upon which the determination rests — accentuates the prejudice to the applicant's position in this proceeding resulting from the Authority's failure to state, as findings of fact, what are " all the circumstances " which led to the determination that " it is not conducive to the proper regulation and control of the distribution and sale of alcoholic beverages to issue this license "; and what is the " type of neighborhood " in Verplanck which prompted the decision that " there is no *need* for a package store at the location applied for " (emphasis supplied) — despite the fact of record herein that more than 400 residents of that hamlet signed petitions in support of the granting of a liquor license for off-premises consumption as " a public convenience to hundreds of people."

It is thus made clear that where, as in this case, an unsuccessful applicant for a license invokes the statutory right to review the action of the Authority, the lack of a statement of the factual basis for the determination not only burdens the applicant in preparing his challenge to the determination, but also impedes the court in its review of that determination. " If

the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, ' We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' " (*Securities & Exch. Comm. v. Chenery Corp., supra*, pp. 196–197.)

Passing from a consideration of that portion of the Authority's " NOTICE OF DISAPPROVAL ", which lacks a recital of those facts upon which the conclusory statements therein are based, we refer to the decisive use to which the word " need " is put, which, in our view, invalidates the determination.

Although the standard fixed by the Legislature for locating " off premises liquor and wine stores in neighborhood communities " is required to be a location " which most effectively serves *public convenience and advantage* " (A. B. C. Law, § 101-c, subd. 1, emphasis supplied), the Authority, in its second *reason* — already noted — for disapproving the petitioner's application, stated its conclusion to be " In view of the type of neighborhood, there is no *need* for a package store at the location applied for." (Emphasis supplied.)

The word " need ", chosen by the Authority, is not synonymous with either " convenience " or " advantage " — chosen by the Legislature to define the standard it intended to fix. Rather do we think — and indeed it is significant to our problem — that the word " need " connotes a degree of urgency or imperativeness which the statutory phrase " convenience and advantage " does not import. True it is that, as a reviewing court, we owe deference to the Authority — an administrative board — in the exercise of its discretion *within the law*. That discretion, however, cannot be invoked outside the law. It is for the courts, not for administrative boards, to determine what action is within, or without the law. Upon that subject this court, in the consideration of a similar problem, has said per POUND, J.: " Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public

policy, however excellent such ideas may be." (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157, 162.)

Within that rule we think that, when the Authority denied the petitioner's application for a license, by choosing and considering " need " as the standard for locating an off-premises liquor store in the hamlet of Verplanck, instead of employing to that end the statutory standard of " convenience and advantage ", the Authority disregarded the standard fixed by the Legislature and arrogated to itself power in excess of that which it possesses as an administrative board.

Accordingly, the order of the Appellate Division should be reversed, and the determination of the State Liquor Authority annulled, with costs to the petitioner-appellant in this court and in the Appellate Division and the matter remitted to the Authority for further proceedings not inconsistent with the decision herein.

FULD, J. (concurring). In a case such as this, where the local Alcoholic Beverage Control Board approved the application for a license, the State Liquor Authority is not required by statute to grant a hearing to the applicant. (Alcoholic Beverage Control Law, § 63, subd. 2 ; § 54, subds. 2, 3 ; see, also, *Matter of Glenram Wine & Liq. Corp.* v. *O'Connell*, 295 N. Y. 336, 342.) That being so, I do not believe that the Authority is under the necessity of making specific or formal findings of fact even though the Authority may, as a matter of grace, grant a hearing. (Cf. 1 Benjamin, Administrative Adjudication in the State of New York, p. 253, fn. 3.) I concur for reversal, however, on the limited ground that, so far as appears from the record before us, the Authority, in refusing a license to petitioner for the reason that there was no " need " for a retail liquor store, employed a standard different from that fixed by the Legislature (Alcoholic Beverage Control Law, § 2). Until a proper standard is applied by the Authority, there is no necessity to consider or pass upon the validity of the determination.

The order of the Appellate Division should be reversed, the determination of the State Liquor Authority annulled and the proceeding remitted to the Authority for further consideration on the basis of the standards prescribed by the statute.

DESMOND, J. (dissenting). In this mandamus type proceeding under article 78 of the Civil Practice Act, petitioner-appellant asks the courts to overrule a determination of the State Liquor Authority and command that body to issue to petitioner a license to sell alcoholic beverages, for off-premises consumption, in a building owned by him in the hamlet or unincorporated village of Verplanck, Westchester County. The petition, alleging among other things that there is at present no such licensed " package store " in Verplanck, which, petitioner says, has an all-year population of 2,300 and a summer population of 5,000 persons, charges that the Authority's denial of his application was arbitrary, unreasonable and capricious. The Authority's answer denies any arbitrary action or attitude and points out that there are two licensed retail liquor stores in the village of Buchanan, one and a half miles from petitioner's premises, and eight such shops in the city of Peekskill, four miles distant from Verplanck (it appears elsewhere in the record that there are three others in another community two miles away from Verplanck in another direction). Annexed to the answer is considerable written material embodying the results of an investigation of this application (there was no formal hearing and none is required by statute). Annexed also is the " NOTICE OF DISAPPROVAL " sent by the Authority to petitioner and which sets forth these reasons:

" 1. Under all the circumstances in this case it is not conducive to the proper regulation and control of the distribution and sale of alcoholic beverages to issue this license.

" 2. In view of the type of neighborhood, there is no need for a package store at the location applied for."

The first of those reasons is, we agree, so general in terms as not to amount to a factual finding. The second listed reason, however, is a plain statement that there is no " need " for a package store in the particular neighborhood. Besides its answer, the Authority put in an answering affidavit, by its chairman, in which he alleged, as an additional reason for denial, that petitioner operated a candy store largely patronized by children, in another part of the same building, and that the Authority felt that such proximity was not conducive to proper regulation of the sale of alcoholic beverages. Petitioner com-

plains that this alleged additional reason was never brought to his attention until he was served with the chairman's answering affidavit in this proceeding. Petitioner says he is quite ready to give up the candy store business, if necessary. We will treat the case as if the candy store matter had never been brought up at all.

Special Term, pointing out, among other things, that the Westchester County local board had approved the application, only to have it denied later by the State Authority, and that some 400 residents of Verplanck had signed a petition asking that the license be issued, ordered a jury trial of the charges of unreasonableness and arbitrariness. On appeal by the Authority, the Appellate Division, however, unanimously reversed the lower court's order and dismissed this proceeding, noting that the facts were all undisputed, and holding that there was " no basis upon which either a court or jury could decide that the State Liquor Authority acted arbitrarily or capriciously." (277 App. Div. 882.) With that conclusion we agree.

The Legislature, in our present Alcoholic Beverage Control Law, has in the plainest, strongest language delegated to the Authority the State's own undoubted power (*Metropolitan Bd. of Excise* v. *Barrie,* 34 N. Y. 657, 662 *et seq.*; *Bertholf* v. *O'Reilly,* 74 N. Y. 509, 521), to fix and limit the number of licensed liquor dealers. That delegation (unquestionably valid, see *People ex rel. Doscher* v. *Sisson,* 222 N. Y. 387; Freund on Police Power, § 652, quoted by RODENBECK, J., in *People ex rel. Reuther* v. *Sisson,* 101 Misc. 429, 434) is found in sections 2 and 17 of the act. Section 2 declares it to be the State policy that it is necessary to regulate and control the manufacture and sale of alcoholic beverages, for the purpose of fostering temperance and obedience to law. There follows the legislative declaration " that such policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, *the increase or decrease in the number thereof and the location of premises licensed thereby,* subject only to the right of judicial review hereinafter provided for " (italics supplied). Subdivision 2 of section

17 of the act empowers the Authority " to limit in its discretion the number of licenses of each class to be issued within the state or any political subdivision thereof, and in connection therewith to prohibit the acceptance of applications for such class or classes of licenses which have been so limited.'' It is significant that, by subdivision 2, the limiting of the number of licenses is specifically confided to the Authority's " discretion '', while, in the very next subdivision (3), the power to revoke, cancel or suspend licenses is to be exercised '' for cause '' only. Certain causes for revocation, suspension or cancellation are set forth by the Legislature in careful detail in section 118, but as to original issuance, the whole matter is left, at large, to the Authority's discretion. The legislative intent must have been this: that, within the framework of State policy as announced in section 2, the Authority was to have the broadest discretion to use its unfettered judgment in deciding whether or not to issue licenses in a particular place, even to the extreme of suspending the taking of applications in any particular locality or throughout the whole State. The reasons for this large grant of power are easy to see. They inhere in the liquor business itself, and are written large in the history of the attempts, in this State and elsewhere, to bring the traffic under regulation for its own good as well as for the public good (see *Bertholf* v. *O'Reilly, supra*; *Cronin* v. *Adams,* 192 U. S. 108). How many licensed taverns and package stores there should be is a question, not of law or even of demonstrable fact, but of judgment and informed opinion.

The Legislature in fairness recognized that, once such a license had been issued and the licensee had invested his money and his efforts in the business, the license should not be taken from him except for substantial cause, and the Legislature defined and listed such causes. But no one initially has a right to such a license. The decision as to how many, if any, there should be, in a locality was committed by the Legislature not to a referendum vote by citizens, or to a jury, or to the courts of original or appellate jurisdiction, but to the State Liquor Authority. Of course that grant was, by section 2, made '' subject only to the right of judicial review hereinafter provided for '' and subdivision 1 of section 121 authorizes a judicial

review, in the manner provided by article 78 of the Civil Practice Act, of a " refusal by the liquor authority to issue a license or a permit." But that apparatus for judicial review does not limit the Authority's express powers. It is a means for judicial investigation of questions as to whether the Authority has failed to act at all, or has exceeded or grossly misused its powers. No rational Legislature, having set up a bipartisan State Authority, appointed by the Governor and obviously intended as a powerful and distinguished organ of government, could have intended that the Authority's discretionary decisions, in matters of pure judgment, should be overhauled by the courts. And I am unable to see how this or any other court could go about the business of determining whether or not there should be a liquor store in the hamlet of Verplanck. (Incidentally, a totaling up of figures in a table put into this record by petitioner shows that in 46 Westchester County communities with a combined population of 525,000, there are already 276 package stores, which number might, not unreasonably, be thought to be enough.)

Petitioner-appellant, recognizing all this, does not argue to us that the Authority's ruling was without basis, on the facts before it. His attack is on the Authority's findings as such. Analyzing the reasons assigned by the Authority for the refusal of his application, petitioner rejects the first assigned cause as being too general and vague to amount to a statement of a reason, and with that position of petitioner we agree. Then petitioner turns to the Authority's second reason, viz.: that " in view of the type of neighborhood, there is no need for a package store at the location applied for." Petitioner nowhere argues that this does not amount to a definite statement of fact, but says that the Authority, in thus assuming to pass on the " need " for a store in Verplanck, was standing on a ground which it had no right to consider, under the statute. Pointing to the phrase " public convenience and advantage " in the policy declarations (*supra*), of section 2 of the act, petitioner tells us that " need " is no criterion and no proper subject of inquiry. Of course, saying there is no " need " is really the Authority's shorthand formula for expressing its opinion that " public convenience and advantage " do not require, and would not be served by, a liquor store in the particular community. Basing license

denials on " need " has not in other Liquor Authority cases, been considered by this court to indicate the use of illegal standards (see the following decisions, in some of which this same word " need " was used by the Authority in stating its grounds for denial, which grounds we approved, expressly or impliedly: *Matter of Glintenkamp* v. *O'Connell*, 296 N. Y. 806; *Matter of Watinsky* v. *O'Connell*, 297 N. Y. 552; *Matter of Fiore* v. *O'Connell*, 297 N. Y. 260; *Matter of Snetlage* v. *O'Connell*, 297 N. Y. 707; *Matter of Pichacz* v. *O'Connell*, 297 N. Y. 981). When the Authority says there is no " need " for a package store, it is obviously saying that public convenience and necessity do not call for one, and it would be idle for us to send the case back to the Authority so that it might substitute the statutory phrase for the word " need ". Since the enactment of this statute " public convenience and advantage " and " need " have been considered to be synonymous (see *Matter of Fenson* v. *State Liq. Authority*, 152 Misc. 446; *Matter of Glintenkamp* v. *O'Connell, supra; Matter of Pickacz* v. *O'Connell, supra*). And, certainly, we should not send the case back to force the Authority to recite in a formal decision the data on which it acted, when that data is all in the record here, all undisputed and most of it furnished to the Authority by petitioner himself.

A word more as to this matter of findings. Formal findings, showing grounds for action, are necessary and important when an administrative body acts quasi-judicially with a hearing, evidence, etc., as in the cases cited in the opinion of Judge LEWIS, or, as to the Liquor Authority itself, when it revokes or cancels a license for cause after a hearing. In such situations, adequate judicial review can be had only on a formal statement of the administrative body's reasons for its quasi-judicial decision. But the discretionary refusal of a license is no quasi-judicial act. The test of the legality of such a refusal is not whether there is " substantial evidence " to support it, but whether it is " arbitrary or capricious " (see Attorney-General Goldstein's Report on Judicial Review of Administrative Action, 2 Syracuse L. Rev., No. 2, p. 200, also in N. Y. L. J., May 15, 16, 17, 1951). As this court put it in *Matter of Stracquadanio* v. *Department of Health* (285 N. Y. 93, 96): " our inquiry is limited to a determination whether the record

discloses circumstances which leave no possible scope for the reasonable exercise of that discretion in the manner of which the appellant complains." Since the question before the Authority here was not one on which it had to make a decision on conflicting evidence, but one in which, without a formal hearing, it exercised its own good judgment and as to which it could not be overruled if there is any " possible scope " for its exercise of discretion, findings are of little consequence, one way or the other. Even assuming their necessity in the present case, we do not know how the Authority could better inform the courts of its reason than by saying that it found no need for a package store in Verplanck. Further findings, which could be no more than a recital of undisputed facts, could serve no purpose at all.

Appellant, while properly insisting on his right to an article 78 court review, is limited to those questions which that article makes reviewable, in such a situation as this. Those questions are set out in section 1296 of the Civil Practice Act. Of the reviewable issues there listed, one only is here present, that is, No. 1: " Whether the respondent failed to perform a duty specifically enjoined upon him [it] by law " — in other words, the question of whether the Authority was bound by law to give petitioner his license. This is mandamus, and, under settled rules petitioner could not have mandamus from any court unless he proved a clear legal right to the license. What clear legal right of his could possibly be infringed here? Surely he does not claim he had a right to sell liquor at retail in Verplanck. Instructive in this connection is the exhaustive opinion of Justice Rodenbeck in *People ex rel. Reuther* v. *Sisson* (*supra*) construing a 1917 Liquor Tax Law amendment by which the Legislature limited the number of licenses in each town to not more than 1 per 500 inhabitants, and left to local commissions the final determination as to who should have those licenses. That resulted, in Reuther's case, in his losing a license he had long enjoyed. Summing up an elaborate examination of the law of liquor licensing, Justice Rodenbeck wrote (101 Misc. 429, 438–439) : " The legislature has the power to reduce the number of liquor licenses in the state by limiting the number that shall exist in proportion to the population and for the purpose of

reducing the existing number may authorize a local commission to determine after investigation and inquiry which places shall be licensed and what places shall not be licensed and to provide that their determination shall be final and conclusive.'' Justice RODENBECK cited *Matter of Hoover* (30 F. 51, 55), where a Federal Judge wrote: '' Now, if the state may prohibit the sale of liquor altogether, since it is clearly not a ' privilege or an immunity ' in the meaning of the constitution, may it not authorize the sale on such terms, by such persons, and at such places, as it thinks proper? And, if it may do this directly, may it not delegate to others the exercise of the power? It has simply delegated a portion of its sovereignty to the county commissioners of Chatham county. The commissioners, in the exercise of that sovereignty, refuse a license to the petitioner. The discretion must rest somewhere.'' That *Hoover* opinion was written in 1887 which saves it from any charge of '' new-fangled '' distortion of the relationship between administrative bodies and courts. The historic fact is that liquor sale licensing has always been carried on just about as it appears in this record, and the courts have always realized that there was nothing quasi-judicial about a routine, discretionary denial of a license.

We do not see how subdivision 2 of section 54 of the Alcoholic Beverage Control Law (found in art. 4, but seemingly made applicable, by subdivision 2 of section 63, to license applications like this one) helps appellant. It requires the State Authority, in such a case as this, to '' state and file in its office its reasons '' for disapproval. It has certainly done so, in this instance. Subdivision 2 requires no hearing at all (see, for contrast, subdivision 3 of the same section 54 which, under circumstances not present here, does mandate a hearing).

The order should be affirmed, with costs.

CONWAY and FROESSEL, JJ., concur with LEWIS, J.; FULD, J., concurs for reversal in separate opinion; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and DYE, J., concur.

Order reversed, etc.