In the Matter of SAM MONACHINO et al., Doing Business as SUPER BEVERAGE COMPANY, Respondents, against NEW YORK STATE LIQUOR AUTHORITY, Appellant.

Fourth Department, September 22, 1958.

*Oscar A. Bloustein* and *Frederick A. Sperling* for appellant.

*Samuel Bernstein* for respondents.

*Per Curiam.* The petitioners instituted this proceeding to set aside the denial of their application for a renewal of their wholesale beer license and to obtain a direction that the license issue. This relief has been granted by Special Term. The area of judicial review has been recently restated in *Matter of Wager* v. *State Liq. Auth.* (4 N Y 2d 465, 467–468) as follows:

"The discretionary power to determine whether or not a person may be licensed to traffic in alcoholic beverages or act as a solicitor by appropriate permit has been conferred upon the State Liquor Authority. The renewal of such licenses and permits is likewise vested by statute in the Authority. In considering the merits of this applicant for renewal of a license or permit, this 'application for a renewal is to be regarded in exactly the same manner as an application for a new license.' (*Matter of Restaurants Longchamps* v. *O'Connell*, 271 App. Div. 684, 686, affd. 296 N. Y. 888.) In such cases the 'inquiry [of the court] is limited to a determination whether the record discloses circumstances which leave no possible scope for the reasonable exercise of that discretion' (*Matter of Stracquadanio* v. *Department of Health*, 285 N. Y. 93, 95, 96). Since 'There is no inherent right in a citizen' to engage in the business of selling intoxicating liquors (*Crowley* v. *Christensen*, 137 U. S. 86, 91; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 517), the test of the legality of the exercise of the discretionary power is solely whether the agency acted arbitrarily or capriciously (*Matter of Barry* v. *O'Connell*, 303 N. Y. 46, 58, 59).''

The Authority in processing this application conducted an extensive investigation and held so-called hearings, although the latter were not required by statute. The focal point of these hearings was the meeting in Apalachin in November, 1957. The petitioners contend that they were there to negotiate with Barbara for the lease of a truck. The Authority has rejected their testimony upon this subject as incredible and untruthful. Among other things, it is stated in the findings of the hearing officer that: "The record furnishes support for the conclusion that throughout the years these two licensees were in contact with persons of evil reputation and that many of them were present at Apalachin on the aforesaid date, November, 1957. It is especially incredible that, although the Monachinos were at the Barbara premises for at least two hours, on their own version, and admit that they knew at least 7 of the 50 odd persons who were on the premises at that time, that they did not speak to any of them. Totally incredible, further is the insistence of the licensees that although they ate with Barbara and his wife in the dining room in the presence of others, they spoke to none of the others nor were they introduced to them. * * * It is beyond belief that these men did not know of a road block at a time when the group gathered at Barbara's home, were attempting to flee in all directions and were being rounded up by the State Police. Their failure to state to any of the Troopers that they were there for the negotiation of a

lease for a trailer and their repetition of the same story that all of the others gave, namely, that 'they were there to see Joe,' their repetition of that story when questioned by the Troopers at the State Police Barracks at Vestal, is convincing proof that the story of the trailer was purely an after-thought. This is fortified by their telephone call to Trooper Vasisko later in an attempt to plant the story about leasing a trailer. It is strange, to say the least, that the arrangements to lease the trailer could not have been arranged over the telephone with one who was on extremely friendly terms with licensees. Instead, licensees would have the Authority believe that it required both licensees together, one of whom was suffering from ulcers and had to bring baby food with him for his meals, to travel 80 miles to make the alleged arrangements for the lease of the trailer with Barbara. The attempted explanation strains credulity and is rejected as a fabrication.''

Upon the record before us we find that the denial of the application for renewal of the license was not arbitrary or capricious and that facts were presented which permitted the Authority to act within its discretionary power.

All concur, except WILLIAMS, J., who concurs as to reversal but votes to remit the matter to the Liquor Authority for further proceedings not inconsistent with the following memorandum: I dissent from that part of the determination which dismisses the proceeding. I would have the matter remitted to the State Liquor Authority for further proceedings not inconsistent with this memorandum. In my opinion, upon the record before us, the refusal of the Authority to renew petitioners' license was arbitrary, capricious and unreasonable. The basic reason stated by the Authority for such refusal was '' that the licensees are not fit and proper persons to continue to hold a license ''. I find nothing in the record to substantiate such a finding particularly in view of the statement of Deputy Commissioner Schmidt: '' The Authority conducted a thorough investigation as to the background of the licensees and interviewed more than 25 representatives of state, federal and local agencies, but did not obtain any derogatory evidence or adverse information as to their character, reputation and activities.''

Present — KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order reversed on the law and determination of the New York State Liquor Authority confirmed, without costs.