Fuld, J.
The petitioner was licensed in 1942 to sell liquor for off-premises consumption and for 15 years thereafter conducted his business in Rochester. In 1957, he was compelled to vacate his store when the building in which it was located was taken by the State in connection with the construction of a highway. Several months before, in May of 1957, in anticipation of his forced removal, he had applied to the State Liquor Authority for per *521 mission to transfer his license to a new location in the Town of Henrietta, a few miles from Rochester. The contemplated site, in an area partly residential and partly business, is on a heavily traveled highway, at its intersection with another busy road. Some 420 feet distant from the petitioner’s proposed location, and on the other side of the highway, is a group of 25 stores, known as the South Town Shopping Plaza. Although Henrietta is a growing town, and had a population of more than 8,400 persons when the application was presented in 1957, it contains no liquor shop within its entire area. There are, we are informed, several package stores in Rochester, within a radius of 5 miles, but no one of them is closer than 2% miles from the petitioner’s desired site.
The local Monroe County Alcoholic Beverage Control Board, following an investigation, approved the petitioner’s application, but it was disapproved by the State Liquor Authority. The latter placed its determination upon the ground that to locate the store “ in such close proximity to a large modern shopping center” would be “ contrary ” to “ the policy (expressed in Bulletin #279, 12/9/55) of prohibiting the location of retail wine and liquor stores in modern shopping centers”. Therefore, the Authority concluded, “ the public convenience and advantage will not be served or promoted by the approval of this application which must be and is Disapproved. ’ ’[1]
The petitioner thereupon brought this article 78 proceeding to review that action. The court at Special Term annulled the determination, upon the ground that it was 11 without hny reasonable basis and must be deemed arbitrary and capricious ”, and directed the Authority to approve the removal and the transfer of the license. Upon appeal, however, the Appellate *522 Division, by a 3 to 2 vote, reversed Special Term and dismissed the proceeding.
The State Liquor Authority is vested with a broad discretion in deciding whether to allow the transfer of a license from one premises to another (Alcoholic Beverage Control Law, §§ 2, 111; see, e.g., Matter of Rochower v. State Liq. Auth., 4 N Y 2d 128; Matter of Wager v. State Liq. Auth., 4 N Y 2d 465; Matter of Gambino v. State Liq. Auth., 4 A D 2d 37, affd. 4 N Y 2d 997), but, obviously, that discretion is not unlimited. It must be a discretion truly exercised and “ within the law” (Matter of Barry v. O’Connell, 303 N. Y. 46, 52), for it is “ the duty of the courts to set at naught arbitrary and unfounded administrative holdings ”. (Matter of Rumsey Mfg. Corp. [Corsi], 296 N. Y. 113, 118; see, also, Matter of Dowsey v. State Liq. Auth., 7 N Y 2d 795, affg. 8 A D 2d 724; Matter of Cowen v. Reavy, 283 N. Y. 232, 237.) We “ owe deference to the Authority”, we wrote in Matter of Barry v. O’Connell (303 N. Y. 46, 52-53, supra),“ in the exercise of its discretion within the law. That discretion, however, oann’ot be invoked outside the law. * * * ‘ Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.’ (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157,162.) ”
In the case before us, the court is thus called upon to say whether the denial of the petitioner’s application was arbitrary and capricious. However, sincé the Authority grounded its decision upon what it chose to label a “ codification and restatement of policy” — compelling the disapproval of every application for removal of a package store to a “ modern shopping center ” — the true question we face is whether that “ policy ” is valid.
To meet the requirements of judicial review, a so-called policy or, for that matter, any other stated criterion for decision, must, at the very least, be understandable, possessed of a definite meaning. The Authority’s formulation of the “ modern shopping center ” policy is far too imprecise to serve either as the reason for a denial of a license or as a fixed standard or guide. One is left entirely in the dark as to what the concept embraces or envisages. Is a “modern shopping center” a collection of *523 stores grouped together in a growing town and designed to attract only the residents of the immediate neighborhood? Is it a group of shops located on a main highway beyond the residential area, intended to attract people from towns and cities near and far? Or is it, as Judge Burke believes (p. 530), solely an accumulation of ‘ ‘ nationally known shops and department stores ’ ’ which are attractive to distant as well as neighboring communities? Is the essential characteristic of the shopping center concept the location of the group of stores in relation to (1) urban centers of population, (2) the place of residence of those whom it is intended to serve, (3) the proximity of other shops of a similar sort, (4) the architectural style or economic character of the stores involved or (5) some complex combination of all these factors? How nebulous and elastic the term is, how uncertain its denotation, is well demonstrated by the recent case of Matter of Dowsey v. State Liq. Auth. (7 N Y 2d 795, affg. 8 A D 2d 724, supra) in which we held that the Authority had mistakenly characterized a grouping of 12 retail stores, including one ££ nationally known chain store ”— a First National Supermarket — as a £< modern shopping center”.
The uncertainty of the Authority’s formulation is further accentuated by its application here. The location sought by the petitioner is not££ in ” the shopping center, however defined, since it is separated from the collection of stores by a heavily traveled highway and is some 420 feet distant. The Authority itself has recognized the literal inapplicability of its yardstick by characterizing the petitioner’s proposed location as <£ in * * * close proximity” to the center. Such interpretation, when read in the light of our decision in the Dowsey case (7 N Y 2d 795, supra), makes it exceedingly difficult, if not impossible, to ascertain what the intended yardstick measures.
There is, however, an even more basic and fundamental reason for holding the asserted shopping center policy unreasonable and arbitrary. Even if we were to assume that the term,££ modern shopping center ”, has a definite meaning, there is no warrant for a policy which excludes liquor stores from all such centers without regard to, indeed in entire disregard of, the facts of any particular dase. The Authority’s reliance upon the policy as basis for denying every license transfer application under 'section 111 of the Alcoholic Beverage Control Law *524 constitutes a capricious exercise of discretion, one made “by administrative officers acting solely on their own ideas of sound public policy (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157, 162.)
The Legislature has made it clear that it is for the Liquor Authority “ to determine whether public convenience and advantage will be promoted by the issuance of licenses * * * and the location of premises licensed thereby, subject only to the right of judicial review” (Alcoholic Beverage Control Law, § 2) and that “ A license [once] issued * * * for any licensed premises shall not be transferable * * * to any other premises * * * except in the [Authority’s] discretion ” (§ 111). No one questions the Authority’s discretionary power to refuse to permit removal of a store to a particular shopping center, if there is basis therefor in the record, on the ground that public convenience and advantage would not thereby be promoted. But this does not permit formulation of a general “ policy ” to cover every petition for transfer to any shopping center in the State.
The Authority’s principal source of support for its shopping center policy is a phrase in section 101-c of the statute. That section, added in 1950, provides for the imposition of minimum consumer resale prices. In seeking to justify the provision, the Legislature declared that the objective was “ to eliminate price wars which unduly stimulate the sale and consumption of liquor and wine, disrupt the orderly sale and distribution thereof, and tend to destroy the statutory plan for location of off premises liquor and wine stores in neighborhood communities which most effectively serves public convenience and advantage ” (Alcoholic Beverage Control Law, § 101-c). Even if the italicized language is considered apart from its context, the contention that the statutory plan for the location of liquor stores requires that such stores be excluded from all shopping centers is to a very large extent refuted by the fact that the Legislature has elsewhere expressly sanctioned the location of liquor stores in railroad terminals (Alcoholic Beverage Control Law, § 105, subd. 2). It cannot possibly be disputed that the several liquor shops in New York City’s Grand Central and Pennsylvania Bailroad Stations, catering as they do to thousands of commuters daily, attract considerable trade which *525 would otherwise be transacted locally. If there were such a required policy or design as the Authority suggests, the Legislature would never have provided for these railroad terminal liquor stores.
Nor may support for the Authority’s ban be found in the provision of the statute that no liquor store shall be located within 1,500 feet of another liquor store on the same street in New York City or within 700 feet elsewhere (Alcoholic Beverage Control Law, § 105, subd. 4). Manifestly, the legislative policy thus enacted is irrelevant to the exclusion of liquor stores from shopping centers no matter how many miles away the nearest liquor shop may be.
New York City and other large cities of this State have over the years served, in a very real sense, as shopping centers for the millions of rural and suburban inhabitants who daily visit them to make their purchases, and, within the cities themselves, certain areas, in contrast with the more residential sections, are pre-eminently shopping centers. Yet it is common knowledge that liquor stores are located in these shopping areas and that their business is by no means confined to persons residing in the immediate neighborhood. We are unable to understand how it may reasonably be said that the rapidly growing Town of Henrietta, with a population close to 9,000 at the time of the application, is any less a neighborhood community than these urban centers. As a matter of fact, many suburban and rural shopping facilities have been expressly designed to retain the business of suburbanites which would otherwise gravitate to the city. The amazing growth of these districts in recent years represents an attempt to serve the phenomenal development of the suburban population, at least as much as it does an attempt to induce urban dwellers to go to the suburbs for their shopping needs. It is not only anachronistic but, more important, without sanction in statute for the Liquor Authority to equate public convenience and advantage with the preservation of the same plan for location of liquor stores as existed prior to the revolutionary population shift to the suburbs.
We suppose that the presence of a liquor store in this or that shopping center could affect the business of “neighborhood” liquor shops located some miles away, and we assume that the interest of such “neighborhood” liquor dealer is entitled to *526 consideration. • But Ms interest is not the only matter to be considered. As the Legislature itself has proclaimed, it is the public convenience and advantage that must be served and promoted (Alcoholic Beverage Control Law, § 2). The Authority, of course, recognizes this as a general proposition, but it contends, curiously enough, that its shopping center policy finds justification in the fact that the public has more and more been attracted to shopping centers. Thus, it is in effect argued, the licensing of a liquor store in a shopping center [1] ‘ would be contrary to public convenience and advantage ’ ’ because, mirabile dictu, the public itself has found the centers to be convenient and advantageous places in which to do its buying. This is an indefensible position, reflecting as it does a perversion of the legislative declaration of policy contained in section 2 of the statute.
In sum, then, the statement of a general “policy” which , excludes liquor stores from every shopping center is unreasonable and unsupportable. This does not mean, though, that the Authority will be powerless ever to disapprove applications for transfer to a location in a shopping center. Of course it has such power, but it must deal with the situation case by case, appraising the facts as each application is submitted. The agency may not avoid the duty imposed upon it, of exercising a sound discretion in each case, by adopting an all-encompassing shopping center “policy”, for, by so doing, it forecloses consideration of the various factors which the Legislature intended that it take into account in reaching a decision. It is hardly necessary to say that, in reaching this conclusion, we are not presuming to substitute our judgment for that of the Authority. If an administrative agency acts within permissible limits of the law and its conclusions find reasonable support in the record, its determination is conclusive. Here, however, the Authority, in promulgating and relying upon its announced general policy, exceeded its powers and acted outside the law.
In view of our conclusion, it follows that the order of the Appellate Division must be reversed and the determination of the Authority annulled. There remains the question of the appropriate form of relief to be granted. In the very similar Dowsey case (7 N Y 2d 795), where, as here, the record did not support the denial of the application, we affirmed the Special *527 Term order which directed the Authority to approve the transfer. However, despite the fact that the present record does not justify refusal of the petitioner’s application, we have decided that it is more in accord with the legislative design to remit the matter to the Authority so that it may reconsider the application on its particular facts without reliance on the invalid general shopping center prohibition.
The order of the Appellate Division should be reversed, the determination of the State Liquor Authority annulled, with costs to the appellant in this court and in the Appellate Division, and the matter remitted to the Authority for further proceedings not inconsistent with this opinion.

. The Bulletin which expressed the “policy”, on which the Authority relied for its conclusion, was entitled “ Removal of Package Stores ” and was addressed to “ Package Store Licensees ”. It opened with a sentence calling the attention of such licensees to “ the following codification and restatement of policy governing removals of package stores ” and, in a later paragraph, entitled “ Shopping Centers ”, concluded with the statement that, in view of certain recited “ circumstances ”, “ the Authority has determined that the licensing of package stores in modern ‘ shopping centers’ would be contrary to public convenience and advantage; and therefore, the Authority will continue to disapprove petitions to remove package stores to modern ‘ shopping centers ’.”