Bergan, J.
Petitioner is an Ohio stock legal reserve life insurance company admitted in 1939 to do business in New York. In 1940 it was given a special permit by the Superintendent of Insurance to issue participating policies in New York (Insurance Law, § 216, subd. 6, par. [b]).
This statute requires that such a 11 special permit ’ ’ to issue participating policies shall be conditional on the company’s agreement, approved by its directors, that so long as there are outstanding participating policies held by New York residents “no profits on” such policies “shall inure to the benefit of the stockholders ” in excess of 10% of the profits or 50 cents per year per thousand dollars of such insurance in force at the end of the year, whichever is larger. Such an agreement was made by petitioners as a condition of the issuance of the 1940 permit.
The statute (Insurance Law, § 26, subd. 1) requires insurance companies to file annually with the Superintendent on or before March 1 a statement of their condition at the end of the prior year in such form and containing such matters as the Superintendent shall prescribe. When a special permit has been issued and the agreement under section 216 (subd. 6, par. [b]) has been made, the statute also requires that the company “ shall exhibit the amount of participating policyholders’ surplus ” in its annual statement (§ 216, subd. 6, par. [b], third unnumbered paragraph).
During the years 1940 through 1957 the petitioner filed annual statements with the Insurance Department. In these reports it allocated certain amounts to stockholder dividends and certain amounts to policyholder dividends and carried the remainder of its divisible surplus as “Unassigned surplus”. It has been stipulated between the parties that in the years *242 in question petitioner did not maintain a stockholders’ surplus account or a participating policyholders’ fund account. It paid out, however, from time to time during the 18-year period 1940 through 1957 dividends to its stockholders which in part were derived from profits on the participating life insurance policies.
These payments were not made annually as the profits were realized. But the amounts thus paid never at any time exceeded the total amount which under the statute the company was entitled to pay in dividends to stockholders, either for the year in which it was paid, or from the accumulated amounts from prior years. And it is not disputed that during all this 18-year period policyholders received in dividends all they were entitled to receive.
The Superintendent has disapproved this method of operation by petitioner during the 18-year period and has imposed a heavy sanction by way of penalty. The company has been directed to deduct from its surplus account and to credit to the policyholders’ surplus account the amounts thus paid in dividends which, under an arithmetical process not in dispute but stipulated, would amount to over $2,000,000.
The main basis for the Superintendent’s decision is that the statute (§ 216, subd. 6) and the agreement require contemporaneous annual action by the board of directors of the company authorizing the payment of stockholders’ dividends from the profits on participating policy business and also require the payment of those dividends annually. On failure of such specific authorization and payment the Superintendent contends the right to pay the dividends is forfeited and this portion of the profit must be placed in the policyholders’ surplus.
The statute does not impose a requirement for annual allocation and payment of dividends to which stockholders, are entitled and its language gives no suggestion that this was the intention of the draftsmen. It is, rather, in terms a limitation on profits. It lays down a boundary beyond which there is deemed to be an excess. It uses the term “inure to the benefit of the stockholders”. The word “inure” admits the possibility of accumulation and suggests a total effect of more than one benefit. The word in context seems to negate a requirement' for immediate or contemporaneous payment.
*243 However it is read, the statute is not so manifest a denunciation of accumulation as to warrant the heavy penalty which the Superintendent has imposed because the profits were allowed to accumulate and then paid, rather than declared and paid immediately as they became available.
In part the Superintendent’s sanctions seem to have rested on the inadequacy of petitioner’s reporting its method of disposing of profits on participating policy business in its annual statements during the 18 years in issue. The statute (Insurance Law, § 26, subd. 1), as it has been seen, requires all insurance companies to file the annual statement of their condition in a form prescribed by the Superintendent; and section 216 (subd. 6) specifically requires a company in petitioner’s status to “ exhibit the amounts of participating policyholders’ surplus ” in the annual statement.
In discussing the statutory obligation of the petitioner to limit its profits to stockholders, to allocate gains and expenses to participating policies, and to exhibit the amounts of participating policyholders ’ surplus, the Superintendent seems to suggest that “Schedule NP — Life ” was the appropriate place in the annual statements filed by petitioners to reflect these matters.
The Superintendent’s brief argues that “Schedule N.P., which has been in use for many years, is designed to reflect these statutory requirements. Appellant admittedly left the report blank on these matters.”
But the form of annual statement prescribed by the Superintendent (Schedule NP—Life) announced in large type that its purpose was to show “separation of accounts” between participating and nonparticipating business. Since the petitioner had no nonparticipating business and hence no such “ separation of accounts ”, it filled in “ none ” on the succeeding pages of Schedule NP.
One section of this schedule prescribed by the Superintendent was entitled “ Stockholders’ Surplus Account Exhibit” which was also filled in “none” by petitioner during the disputed years. It is here, the Superintendent seems to suggest, petitioner should have exhibited, as the statute prescribes, the amounts of the participating policyholders’ surplus. The precise exhibit of the schedule related to a “ Stockholders’ Surplus Fund Account” and the Superintendent’s instructions stated *244 that this exhibit need only be filled in “ when such an account is maintained on the company’s records ”. Concededly no such account was maintained on the petitioner’s books.
These bare areas left by the reporting methods of petitioner were at least arguably within the exact form which the Superintendent had prescribed for the annual statement. If the effect had been to conceal an actual breach of the statutory ceiling in stockholders’ dividends or a deprivation of dividends belonging to policyholders from the profits, a more rigid standard to measure the reporting practices of the company might be justified.
The Superintendent, of course, could have imposed, and can now prescribe, requirements for additional and precisely segregated accounting of the distribution of these profits; and he could have laid down an enforcible rule that if a company wants to distribute such profits to its stockholders it must do so annually as the profits become manifest and on due annual formal vote of its directors. But he ought not to do this retroactively and punitively in an area where the legal duty of the company is fairly debatable.
In commenting in his decision on the scope of his own powers, the Superintendent noted that he is “ not powerless to remedy the injustice done by an insurance company to New York participating policyholders in violation of statute during the period the company has operated under a New York license and permit.” But no injustice whatever to participating policyholders has been demonstrated or is to be seen in the agreed statement of facts upon which this record is based. Nor has any “ violation of statute ” been clearly spelled out. The controversy between the Insurance Department and the petitioner is at bottom a sterile dispute over form.
In exercising the administrative powers of wide breadth given to him, the Superintendent is required, nevertheless, in imposing a penalty for a statutory violation to follow the statute the way it reads (Matter of Barry v. O’Connell, 303 N. Y. 46) in the absence of some permissible rule promulgated by him and consistent with the statute (People v. Cull, 10 N Y 2d 123). See, also, Matter of Picone v. Commissioner of Licenses (241 N. Y. 157, 162), and Matter of Faith for Today v. Murdock (11 A D 2d 718, 720, affd. 9 N Y 2d 761) which follows Picone.
*245 The statute is the charter of the Superintendent’s authority (Matter of Morrissey v. New York State Employees’ Retirement System, 298 N. Y. 442). The penalty imposed upon petitioner would usually be required to rest on a rather clear showing of some statutory violation. (Cf., e.g., Berger v. City of New York, 260 App. Div. 402, affd. 285 N. Y. 723; Miller v. Town of Irondequoit, 243 App. Div. 240, affd. 268 N. Y. 578; Leppard v. O’Brien, 225 App. Div. 162, affd. 252 N. Y. 563.)
On the argument in this court counsel for petitioner asserted categorically that the petitioner did what “ concededly it could have done ’ ’ year by year and that ‘ ‘ it has made no difference to anyone ’ ’. The Superintendent has not come to grips with this argument and, aside from a tenuous contention, it is left largely unrefuted.
The order should be reversed and the determination of the Superintendent annulled in accordance with the stipulated facts, with costs to appellant in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Scileppi concur.
Order reversed, etc.