Benjamin Brenner, J.
This proceeding pursuant to section 123 of the Alcoholic Beverage Control Law is brought by petitioner to annul a determination of respondent Authority granting a license for the operation of a retail off-premises liquor store at 612 Sutter Avenue in the Borough of Brooklyn. The area is commonly known as Bast New York and borders the Brownsville section. The petitioner, who is a competitor of the prospective licensee, operates a similar package store at 568 Sutter Avenue. The distance between the two locations is computed by the petitioner at 365 feet and by respondent Authority at 430 feet. Whatever the precise dimensions, the sketches attached to the papers establish that these stores will be approximately 1% blocks apart, separated' by only one street crossing, Georgia Avenue.
*925 The initial investigation ordered by the State Authority, a copy of which is annexed to their answer, appears "to be thorough and painstaking. The areas of inquiry include “ accessibility of stores, social conditions, traffic movement in area, population density and retail business activity.” The investigator found this to be primarily a residential section with the area adjoining to the north “ characterized, principally, by warehouses, junkyards and factories.” There has been no population increase since the 1960 census and the number of housing units has decreased as a result of abandonment and closing of property by owners. Windows and doors of many small units have been boarded up, with consequent vandalism and extreme deterioration, so that they are “ unfit for immediate re-occupancy.” No new housing construction is now in progress or planned for the immediate future. Petitioner alleges additionally that an entire square block of housing property adjacent to the premises has been demolished for the erection of a new public school. This is denied in the answer of respondent but the report of its investigator submitted October 18, 1966 does state that “ a new school is being built at the present time ” one block from the premises.
Retail business activity is that ‘1 required by a very low income group. It is apparently considerably less than brisk. Closed and boarded stores are to be seen on Sutter Avenue and other thoroughfares of the area. ’ ’ Traffic is ‘ ‘ moderate and mainly commercial. Pedestrian traffic is less than moderate * * *. It is notable that no supermarket nor similar business is currently located on Sutter Avenue between the west and east boundaries of the area in question, a distance of seven city blocks.”
With respect to social conditions, the report states:
‘ ‘ The area of survey is the major part of the larger tract that has been designated the ‘ target area ’ by this city for its antipoverty program. The survey by Housing & Redevelopment, according to Miss Nothelfer, has found that a very high percentage of the total population of the area are recipients of public assistance; that unemployment and drug addiction rates are high.
‘ ‘ The 74th Pct., P. D. N. Y. C. reports that the ‘ target arca ’ is characetrized as having one of the higher crime rates in the City of N. Y.
“ Mrs. Taylor, secretary of the Council for a Better East New York, a privately funded organization, supplied the following statistics concerning this area:
*926 Report: .
“ A.D.C. (Aid to Dependent Children), cases ■ — 264.2 per 1000 of the population. Said figure represents a 270% increase in a 28 month period. '
“ Juvenile Delinquency — 138 cases per 1000. This represents an increase of 154% in a (3) year period.
“ Venereal Disease — 345.1 cases per 100,000 of population. This figure represents an increase of 388% in a (3) year period.
“ The secretary states that the above statistics were obtained from the Police Dept., the Welfare Dept, and the Health Dept., NYC.”
The investigator concludes his report with the summary; “ This applicant is seeking to do business in an area which according to Housing and Redevelopment is * extremely deteriorated ’. The general character of the area and the type of merchandise being offered by the retail stores in it is not inducive to trade from adjoining areas. * * * tradesmen in the. area of concern are virtually limited to doing business, solely, with the area’s residents.”
There is good reason to believe that the Authority was less than satisfied with this report and a further investigation was ordered. This report is dated approximately four months after the previous one and is also incorporated in the answer. It is neither as thorough, detailed nor as factual as the first investigation and omits large areas of inquiry previously covered. It contains, among other things, a brief description of the types of stores in the block for the proposed license and transportation facilities. The investigator closes with a report of an interview with a patrolman from the area police precinct. 1 ‘ He said that the recent riots that resulted in the death of Eric Dean occurred on Dumont Avenue, 13 blocks east of Georgia Avenue and where the proposed site of the liquor store is to be located.
“ The other riot occurred 4 blocks west and one block south of Georgia Avenue. ’ ’
Following this last inquiry, the members of the Authority, with one dissenting vote, determined, to issue the license.
The Court of Appeals in Matter of Forman v. New York State Liq. Auth. (17 N Y 2d 224, 228) has imposed a twofold obligation on the Authority: “ to develop a complete record as to the package store license application and to establish the basis for the Authority’s conclusion that the grant of the license will promote ‘ public convenience and advantage ’ (Alcoholic Beverage Control Law, §§ 2, 63, subd. 6).” Clearly the record in this ease conforms fully with the guidelines laid down in Forman in that it *927 is as complete as can be reasonably required. In my opinion, however, the conclusion by the Authority that the issuance of the license will promote public convenience and advantage is not justified on this record.
It should initially be noted that no precedent has been cited where a court has granted an injunction such as is sought here solely on the basis of public convenience and advantage. In Matter of O’Brien v. Rozza (271 N. Y. 545) and Matter of Frank v. Hub Liq. (244 App. Div. 496, affd. 268 N. Y. 688) the Court of Appeals confirmed the grant of an injunction for “ illegality” pursuant to section 123 where the competing store was within 1,500 feet of the proposed licensee, contrary to the provisions of subdivision 4 of section 105 of the Alcoholic Beverage Control Law.
Section 2 of the Alcoholic Beverage Control Law empowers the Liquor Authority to “ determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages * * * subject only to the right of judicial review hereinafter provided for.” In this case petitioner has sought such “ right of judicial review ” pursuant to section 123 of the Alcoholic Beverage Control Law. By the provisions of this section, the Supreme Court is empowered to enjoin “ illegal ” traffic in liquor upon petition of “ the liquor authority or any taxpayer residing in the city, village, or town in which such activity is or is about to be engaged or participated in ”. Section 123 has been finally construed as permitting an application, such as requested here to bar issuance of a license (Matter of O’Brien v. Rozza, supra; Matter of McNulty v. State Liq. Auth., 17 N Y 2d 434; Matter of Forman v. New York State Liq. Auth., supra).
Without doubt, the Authority is vested with wide discretion in determining whether issuance of a license is warranted by the circumstances in each application and I am therefore not unmindful of the limitations placed upon a reviewing court which takes that wide discretion into account. Nor do I take issue with the basic proposition that a court should not usurp the functions of an administrative agency nor substitute its judgments for that of the agency. It is equally well settled that judicial review should be primarily addressed to the question whether the record supports the determination by the agency. ‘ ‘ Our inquiry is limited to a determination whether the record discloses circumstances which' leave no possible scope for. the reasonable exercise of that discretion in the manner of which an appellant complains.” (Matter of Stracquadanio v. Department of Health, 285 N. Y. 93, 96.) However, as stated *928 in .Matter of Swalbach v. State Liq. Auth. (7 N Y 2d 518, 522): “ that discretion is not unlimited. It must be a discretion truly exercised and 1 within the law ’ (Matter of Barry v. O’Connell, 303 N. Y. 46, 52), for it is ‘ the duty of the courts to set at naught arbitrary and unfounded administrative holdings (Matter
of Rumsey Mfg. Corp. [Corsi], 296 N. Y. 113, 118; see, also, Matter of Dowsey v. State Liq. Auth., 7 N Y 2d 795, affg. 8 A D 2d 724; Matter of Cowen v. Reavy, 283 N. Y. 232, 237.) We ‘ owe deference to the Authority we wrote in Matter of Barry v. O’Connell (303 N. Y. 46, 52-53, supra), 1 in the exercise of its discretion within the law. That discretion, however, cannot be invoked outside the law. * * * “ Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.” (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157, 162.) ’ ”
Given the requisite power pursuant to sections 2 and 123 to review determinations of the Authority, this court has an obligation to determine whether public convenience and advantage will be served by the issuance of the license. I cannot by any stretch of the imagination conceive how public convenience and advantage would be promoted or served by licensing another store within one and one-half blocks from an existing licensed facility in this dilapidated, poverty stricken, disease and crime-ridden neighborhood. This is an area Avhere aid to dependent children is required for one of every four children (representing an increase of 270% in 28 months), where juvenile delinquency affects more than 13 of every 100 (an increase of 154% in three years), an area which has achieved questionable fame as a spawning ground for unrest and riots. Surely, the discretion vested in the Liquor Authority under article 2 of the Alcoholic Beverage Control Luav may not, as here, be grossly abused. Where the objective recited in the statute of 1 ‘ fostering and promoting temperance ’ ’ is aborted, the wholesome safeguard of review by the courts must be utilized and the proposed evil of fostering excesses in an already demoralized area averted.
The record and the reasons advanced by the Authority for its final determination to issue the license have been carefully examined and one can only conclude that the principal motivating influence here Avas an inter.ti n to promote competition.with licensed stores in the vicinity. This is indicated by the undue stress placed upon sharply increased gross income figures for these stores within recent years and upon the mechanical computation of distance between these stores. Beyond question this was intended to conform with the recommendations of the More- *929 land Commission Report and the amendments to the Alcoholic Beverage Control Law following it which eliminated many of the previous license restrictions. I cannot question a reasonable determination of the Authority which relies in part on the gross income and proximity of existing licenses. In my view, however, it should not be the prime purpose of the Liquor Authority to eliminate monopoly in liquor establishments, nor should it be its aim to promote competition solely to punish a successful liquor merchant, which certainly is not its function. In short, it seems to me the paramount criteria are not only the convenience and advantage to the liquor merchant and consumer but to all the inhabitants of the neighborhood, including the nonthinking portion of the population as well.
Petitioner’s application to annul the determination of the respondent State Liquor Authority and to enjoin operation of the prospective store is granted.
Evidence of the petitioner’s taxpayer and residence status having now been submitted, judgment is directed to be settled on notice accordingly.